Argued and submitted August 31, 1981, affirmed in part; reversed in part February 2, reconsideration denied March 11, petition for review denied April 20, 1982 (292 Or 863)

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT DWAYNE GHOLSTON,
*Appellant.*

(No. C 80-09-33303, CA A20094)

639 P2d 1302

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant was convicted in a jury trial of two counts of theft in the second degree, ORS 164.045, and one count of theft by extortion. ORS 164.075. Defendant appeals all three convictions, contending the court erred in denying his motion to suppress, in not allowing oral argument on the motion, in not stating the grounds for its ruling on the motion and in denying defendant's motion for a judgment of acquittal.

■     The victim first met defendant at a bar where she offered him a ride home. When leaving the victim's car, defendant grabbed her purse and ran. After arriving at her apartment some time later, she reported the theft to the police. Later, defendant called her at home to explain the reason for taking the purse. A police officer arrived at the victim's home to investigate the theft while defendant was on the telephone with the victim. On direction from the police, the victim arranged for a "drop" where she would exchange $50 for her wallet.[1] The victim gave police the following description of defendant: black male, about 25 years old, 180 pounds, bearded, possibly speaking with a southern accent, wearing a tan suit and calling himself Robert. After the money was left at the designated location, defendant was arrested one-half block from the phone booth. A search of his person revealed a pencil, a receipt with the victim's name on it and a piece of paper with the telephone number of the telephone booth on it.

Defendant contends that the state did not meet its burden of proving the validity of the warrantless search and arrest. He argues that there was no probable cause to arrest and that the search incident to that arrest was therefore unlawful. We disagree.

Probable cause is defined in ORS 131.005(11) as

---

[1] The wallet was in the purse. It appears that it was the type of billfold that holds currency, identification and personal checks. During the telephone conversation, the officer advised the victim to offer defendant $25 for the return of the wallet. Defendant balked. The victim increased the offer to $50, and defendant accepted. He called again later and told the victim to leave the money at a particular telephone booth. When the victim arrived at the telephone booth, there was a note instructing her to leave the money "next to a water fountain."

"a substantial objective basis for believing that · more likely than not an offense has been committed and a person to be arrested has committed it."

Defendant was near the drop site at the designated time and matched the description given by the victim.[2] These facts clearly gave police probable cause to believe that defendant had committed a crime. *State v. Crockett,* 34 Or App 1019, 1023, 580 P2d 214 (1978). Under these circumstances, it cannot be said that the police acted on a "mere possibility" or used "guess work." There is ample authority holding similar physical descriptions, employed in like time sequences, to be a basis for probable cause to arrest. *State v. Armstrong,* 52 Or App 161, 168 628 P2d 1206, *rev den* 291 Or 662 (1981); *State v. Zimmerlee,* 45 Or App 107, 111, 607 P2d 782, *rev den* 289 Or 71 (1980). We find that the search was incident to a lawful arrest based on probable cause.

Defendant next assigns as error the trial court's refusal to hear oral argument at the hearing on the motion to suppress and the court's failure to state the grounds for denying the motion. The motion was in writing with points and authorities but without a supporting affidavit. The grounds urged for suppression were sufficiently stated.

■ Appellant bases his argument on an interpretation of "shall be heard" as found in ORS 133.673(1), which concerns motions to suppress, and on Art I, § 11 of the Oregon Constitution. A defendant's right to be fully heard and to be assisted by counsel in his defense is fundamental. We do not agree, however, that defendant's right to be heard mandates oral argument on a pre-trial motion to suppress.

Defendant relies upon *Herring v. New York,* 422 US 853, 95 S Ct 2550, 45 L Ed 2d 593 (1965), and *State v. Rogoway,* 45 Or 601, 78 P 987 (1904). Those cases require a trial court to permit closing arguments. Both emphasize the decisive role of closing argument. It is the last opportunity for a concise and persuasive summation that "could spell the difference, for the defendant, between liberty and

---

[2] Defendant had a goatee instead of a beard and did not speak with a southern accent.

unjust imprisonment." *Herring v. New York,* 422 US at 863. A closing argument is therefore qualitatively different than oral argument on a pre-trial motion. *Herring* is specifically limited to final argument:

"Nothing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial or appellate process." 422 US at 863 n 13.

Accordingly, we find that the trial court was within its discretion in limiting defendant to his written motion without oral argument.

■ Defendant argues that the trial court erred in not stating the grounds for denying the motion to suppress. *State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, *rev den* (1974), states that, while making findings is the better practice, the trial judge is required to make findings only if the motion is based on several grounds. The motion here had one basis: the search was not pursuant to a lawful arrest based on probable cause. In denying the motion, the judge necessarily found the arrest lawful. *State v. Hacker,* 51 Or App 743, 627 P2d 11 (1981).

■ Defendant's final contention is that the trial court erred in denying his motion for acquittal. There is no motion appearing in the record. The order recites, however, that a motion was made and denied at the close of the state's case. When there is a conflict between the record and the order, the order controls. *State v. Swain/Goldsmith,* 267 Or 527 517 P2d 684 (1974); *State v. Hallin,* 43 Or App 401, 602 P2d 1134 (1979). The motion could have been addressed to one, two, or all three counts in the indictment. On appeal, he contends that the motion was directed to the second count charging theft by extortion. We address the merits of defendant's argument.

■ The test for determining the sufficiency of the evidence in a criminal case is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980), (quoting *Jackson v. Virginia,* 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979)). *State v. Rice,* 48 Or App 115, 117, 610 P2d

538 (1980). The state contends that there is sufficient evidence to sustain a conviction of theft by extortion. We do not agree.

The Commentary by the Criminal Law Revision Commission relating to ORS 164.075[3] states: "The issues are whether the threat is intended to intimidate and whether it is effective for that purpose."[4] It further states that the actor would commit theft by extortion if "he actually obtained property from another *as a result of* the threat." (Emphasis added.) We find no such causation in the evidence presented.

Defendant was indicted for intentionally inducing or compelling the victim to deliver currency by threating to forge checks on the victim's bank account. The victim was talking by telephone with defendant when police arrived at her apartment. She testified that defendant had called to explain that he had stolen the purse because she had embarrassed him.[5] She further testified that defendant agreed to mail her identification to her. At the officers' direction, the victim then offered defendant $25 in exchange for her wallet. Defendant expressed suspicion, and the victim increased her offer to $50. The victim testified that defendant said that $50 "sounded pretty good to him," and arrangements were made for the exchange. The discussion then turned to the victim's checkbook. She testified that he then stated "he had some female friends * * * who could easily write checks on that account." It is clear from this testimony that the agreement to exchange money for

---

[3] ORS 164.075(1), in pertinent part, provides:

"A person commits theft by extortion when he compels or induces another person to deliver property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will in the future:

"* * * * *

"(c) Engage in other conduct constituting a crime; or

"* * * * * "

[4] *See* Commentary, Criminal Law Revision Commission "Proposed Oregon Criminal Code," 134-35 (1970). This quoted statement appears under the explanation of subsection(a), but it seems applicable to all subsections, for they merely list different threatened actions.

[5] The parties had met for the first time that evening at a bar, and he felt angry and embarrassed when she spoke to other men and kept him waiting.

the wallet *preceded* the threat of forgery. There is no evidence that the amount was augmented as a result of the conversation concerning the checkbook. Thus, the charge of theft by extortion *as set out in this indictment* was not proven.

The state relies on *State v. Marsh,* 43 Or App 571, 603 P2d 1212 (1979), *rev den* 288 Or 667 (1980), where a bomb threat was made to a store owner. The store owner contacted police and was instructed to mark the money that was requested and to give the money to the defendant. This court upheld the denial of a directed verdict, stating:

"Assuming that the subjective mind of the victim is an element of the offense, it was a factual determination for the jury as to whether he was in part motivated by fear of an explosion in giving the money to [the defendant]. The jury could infer that the store manager called the police and ultimately surrendered the money because of a concern that there was actually a bomb in the store which would be detonated if the money was not delivered." 43 Or App at 576-77.

We went on to say that we could not hold, as a matter of law, that the participation of the police in marking the money and instructing the victim reduced defendant's actions to attempted theft by extortion.

The present case is clearly distinguishable. Here, defendant was to receive nothing as a result of the threat alleged in the indictment. No "theft," or attempted theft, has been proved. We hold that, in viewing the evidence in the light most favorable to the state, no rational jury could have found the essential elements of theft by extortion as charged beyond a reasonable doubt. We affirm the convictions for theft in the second degree and reverse the conviction for theft by extortion.

Affirmed in part; reversed in part.