597 A.2d 978

STATE of Maryland

v.

Derrick O. BROWN.

No. 91, Sept. Term, 1990.

Court of Appeals of Maryland.

Nov. 6, 1991.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned, and BRUCE C. WILLIAMS, Chief Judge of the Fifth Judicial Circuit of Md., Specially Assigned.

McAULIFFE, Judge.

This case presents two questions. Did the defendant have a right to present argument at the conclusion of an evidentiary hearing of a motion to suppress his confession? If so, does this record permit a determination of whether he was denied that right?

## I.

The body of Renee Thomas was found in a wooded area to the rear of a school in Capitol Heights in Prince George's County on 26 March 1988. She had been severely beaten about the face and head, and there was evidence of a sexual assault. The defendant was charged with the murder of Ms. Thomas, and he filed a motion to suppress statements made by him, alleging generally that the statements were illegally obtained and were involuntary. At the hearing on the motion, the following additional facts were received.

At about 2:30 a.m. on 2 August 1988, the defendant called the Prince George's County police and asked to speak to Detective Swope, whom he knew. According to the police, the defendant said he wanted to turn himself in for killing his girl friend in Capitol Heights. Detective Swope was not available, but other officers agreed to meet the defendant at a mutually convenient location. There, the officers asked the defendant to accompany them to the police station, and the defendant agreed.

The defendant admitted calling the police. He said he did so because an unidentified person told him Detective Swope wanted to talk to him about his involvement in the homicide of Renee Thomas. The defendant denied telling the officers he called that he was in fact involved in the homicide but said he agreed to meet with them.

The police officers testified that the defendant was advised of his rights upon arrival at the station and agreed to answer questions. Thereafter, the defendant gave an oral statement, signed and initialled a four-page statement written by the police, and wrote the following brief statement:

> I, Mr. Derrick, did have a problem with Renee Thomas, and I got here [sic] on the corner, and took her in the woods, and took her off the map.

According to the police, the defendant told them he was angry with the victim because she had stolen money from him. They said he told them he took her to the rear of the school in Capitol Heights to have sexual relations with her,

and when he had completed the sexual act, he beat her repeatedly with a tree limb. At their request, the officers testified, the defendant took them to the scene of the crime, pointing out an area close to where the victim had been found.

The defendant testified that during the day immediately preceding his interrogation he had consumed four or five pints of whiskey and had smoked two small packs of PCP and about $50 worth of crack cocaine. He said he was drunk when he met with the police and when he was later at the police station. He identified his initials and signature on the statement prepared by the police; he said, however, that he had followed police directions by signing and initialing the statement, but had not read it. The defendant identified the brief written statement as his writing, but denied any recollection of writing it. He denied telling the police he had killed Renee Thomas. He said he believed the police were "making up" the alleged confession and trying to "pin the murder" on him. He testified that he signed the statement because Detective Gary Shimp told him "the quicker you sign this, the quicker you can get out of here." He said that because he was intoxicated he did not understand what he was signing, and believed only that his statement was required for his release. He said the police took him to the school; he did not direct them there.

Witnesses called by the defendant corroborated his use of alcohol and drugs throughout the day of August 1. A friend whom the defendant had called from the police station testified the defendant "sounded intoxicated" at about 3 or 3:30 a.m. on August 2. Another witness testified that the defendant was drunk at 11:00 p.m. on August 1. The defendant's sister testified that she spoke with the defendant at the police station at 6:30 a.m. on August 2, and at that time he was drunk and under the influence of drugs. She said the "whole room smelled like liquor," and that her brother did not know where he was, what had happened, or how he had gotten there. She testified that she asked the

police to administer a "drug and alcohol test" to her brother.

The three police officers who had direct contact with the defendant on August 2 testified that he was sober, although one said he had a strong odor of alcohol about his person. Detective Garland Price, who permitted the defendant's sister to visit with him after the interview, testified that she had asked "have we or do we have any way of checking him for drugs." He said no tests were administered. Detective Shimp denied having told the defendant that the quicker he signed the statement the quicker he would be released, and denied making promises or inducements to the defendant.

At the conclusion of the testimony, the trial judge called upon defense counsel for argument. The following colloquy ensued:

THE COURT: Alright, Mr. Niland, what do you want to tell me, sir?

MR. NILAND: Your Honor, the law in this area I think is, so far as I know, is fairly set out in several cases, two of which are Hopkins versus State, 19 Maryland App 414 and Farr versus State, 36 Maryland App 615 with respect to the consideration of intoxication and/or the effect of intoxication upon a person in having given a statement and whether the statement's knowing and voluntary. I concede the law in those areas is not very definitive or clear cut in telling us what kind of cases intoxication has reached a level where a statement would not be knowing or voluntary and, in fact, cases indicate the simple fact that a person is intoxicated or under the influence of drugs does not per se make a statement involuntary or unknowingly given and, therefore, does not per se exclude a statement.

Now, however, I think that in this case you have several factual considerations.

THE COURT: Let me stop you right here. I am aware of everything that you've just told me and so forth and I really would give a lot more consideration to what you're

saying except for one factor in this case, and I'm going to cut you short because I have to be someplace else.

But the problem I have in this case in regards to anything you're going to tell me about intoxication, drugs, whether it's free or voluntary, this is not the usual case that I see where there is an arrest made by the police or—your client initiated this whole procedure. It wasn't as a result of anything that the police did in this case that he was in Forestville.

MR. NILAND: I agree with that.

THE COURT: It was as a result of what he did and his actions in getting to Forestville were free and voluntary on his part. The police had nothing to do with getting him there. It was his idea. It was at his insistence. It was at his phone calls that he was in Forestville being questioned by the police.

MR. NILAND: I don't disagree that he initiated the contact.

THE COURT: That's what takes this case out of the ordinary and—

MR. NILAND: To an extent it does, but it also reflects upon his lack of judgment as a result of having been engaged in the use, heavy use of alcohol and drugs before he contacted the police. Most sensible people, I would think most sensible people wouldn't call the police and say come and get me and talk about homicide.

THE COURT: I'm going to cut this real short. That's a problem for the jury, as far as I'm concerned. At this time I'm convinced by a preponderance of the evidence that what he—whatever statements he made orally or written were freely and voluntarily given and as a consequence your motion to suppress any and all statements in this case are denied. Always a pleasure to see you gentlemen.

MR. NILAND: And you, Your Honor.

[PROSECUTOR]: Not to belabor anything, I think if you would indicate for the record that the—I think it's

necessary we show that you're finding that Miranda was complied with and—

THE COURT: I'm going to amend the findings to show not only were the statements given freely and voluntarily, but they were given after he was advised of his constitutional rights.

[PROSECUTOR]: It was not as a result of any promises.

THE COURT: Well, it's freely and voluntarily.

[PROSECUTOR]: Maybe I'm belaboring it so far, Your Honor.

THE COURT: If it's freely and voluntarily—anything else? Always a pleasure to see you gentlemen.

MR. NILAND: Thank you, Your Honor.

[PROSECUTOR]: Thank you, Your Honor.

A jury found the defendant guilty of murder in the second degree. The Court of Special Appeals reversed, holding that the defendant was entitled to a full and fair opportunity to present argument at the conclusion of the suppression hearing and that the record demonstrated he had been denied that right. *Brown v. State,* 83 Md.App. 24, 30–32, 573 A.2d 403 (1990). We granted the State's petition for certiorari, and we shall reverse the judgment of the Court of Special Appeals and affirm the judgment of conviction. Although we agree with the intermediate appellate court that under the circumstances of this case the defendant was entitled to present argument at the conclusion of the hearing, we are unable to say from the record before us that he was denied that right.

## II.

█ A defendant who challenges the voluntariness of a confession has an absolute right to a hearing on that issue.[1]

---

1. In this State, a hearing is customarily held in connection with the determination of any motion to suppress filed pursuant to Maryland Rule 4–252. Where a factual dispute is central to the resolution of the

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession ... and even though there is ample evidence aside from the confession to support the conviction.... Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession.

*Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964) (citations omitted). In Maryland, a jury "passes on traditional voluntariness only after the judge, upon a hearing, out of the presence of the jury, has fully and independently resolved the issues against the accused." *State v. Kidd,* 281 Md. 32, 37, 375 A.2d 1105 (1977).

The defendant argues that his right to a "fair hearing" and "reliable determination" necessarily includes the right to present argument. He notes that the Supreme Court has made crystal clear the right of a defendant in a criminal case to present closing argument.

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.

---

motion an evidentiary hearing is required. *McMillian v. State,* 65 Md.App. 21, 30, 499 A.2d 192 (1985).

*Herring v. New York,* 422 U.S. 853, 858–59, 95 S.Ct. 2550, 2553–54, 45 L.Ed.2d 593 (1975) (footnotes omitted). In this State, *see Cherry v. State,* 305 Md. 631, 506 A.2d 228 (1986); *Spence v. State,* 296 Md. 416, 463 A.2d 808 (1983); *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978); *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962).

In *Herring,* however, the Supreme Court was careful to limit its holding to the presentation of argument at the conclusion of a criminal trial.

> We deal in this case only with final argument or summation at the conclusion of the evidence in a criminal trial. Nothing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial or appellate process.

422 U.S. at 863, n. 13, 95 S.Ct. at 2556, n. 13.

Although the Supreme Court has acknowledged the importance of suppression hearings, *Waller v. Georgia,* 467 U.S. 39, 46–47, 104 S.Ct. 2210, 2215–16, 81 L.Ed.2d 31 (1984), it has also pointed out "that the interests underlying a voluntariness hearing do not coincide with the criminal law objective of determining guilt or innocence," *United States v. Raddatz,* 447 U.S. 667, 678, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424 (1980), "that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself," *id.* at 679, 100 S.Ct. at 2414, and "that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." *Id.*

Addressing the right of argument from a due process standpoint, the Supreme Court has said:

> [D]ue process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing ..., in others that argument submitted in writing is sufficient.

*Federal Communications Comm'n v. WJR,* 337 U.S. 265, 275–76, 69 S.Ct. 1097, 1103, 93 L.Ed. 1353 (1949) (citations and footnote omitted). Similarly, *see Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) (" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.").

■ The State is correct in its assertion that neither the Supreme Court nor this Court has as yet recognized an absolute constitutional right to present argument at the conclusion of a suppression hearing. That is not the end of the inquiry, however, for there may be a due process right to present argument in some circumstances, or this Court may recognize a right to argument as a part of the nonconstitutional common law of this State.

We recently recognized that an opportunity for brief allocution can be of great importance to a defendant at a stage of the trial other than the conclusion of the evidence. *See Mitchell v. State,* 320 Md. 756, 769–70, 580 A.2d 196 (1990) (holding as a matter of Maryland nonconstitutional criminal law that a defendant in a summary criminal contempt proceeding is entitled to at least a brief opportunity for allocution before imposition of sentence). We have previously remarked upon the important and sometimes decisive effect a suppression hearing may have upon a criminal prosecution.

A suppression hearing is a critical part of the criminal adjudicatory process. The Supreme Court has noted, with good reason, that "suppression hearings often are as important as the trial itself." *Waller v. Georgia,* 467 U.S. 39, 46–7, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (citations omitted). For example, the State's case may turn upon the defendant's confession or other evidence he seeks to suppress, and the trial court's ruling on such matters may be dispositive of the outcome of the case.

Thus, if the defendant prevails at the hearing, the State's case could be seriously crippled, possibly prompting a dismissal of charges or some other disposition favorable to the defendant. On the other hand, if the State is successful, the suppression hearing may be the *only* proceeding, because the defendant thereafter pleads guilty pursuant to a plea bargain. *See id.* at 47, 104 S.Ct. at 2215.

Moreover, a suppression hearing resembles a full trial in many respects. Witnesses are sworn and provide testimony, and opposing counsel present arguments. Significantly, the outcome of the hearing will frequently turn on the trier of fact's evaluation of the evidence and the credibility of the witnesses.

*Martinez v. State,* 309 Md. 124, 143, 522 A.2d 950 (1987) (emphasis in original). Much of what the Supreme Court said in *Herring* concerning the value of closing argument in a criminal case may be applied with equal force to a suppression hearing where evidence is taken and facts are in dispute.

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions.

*Herring v. New York, supra,* 422 U.S. at 862, 95 S.Ct. at 2555.

The General Assembly of Maryland has recognized the importance of summation and argument, providing in the State Administrative Procedure Act that "[o]n a genuine issue in a contested case, each party is entitled to ... present summation and argument." Maryland Code (1984) § 10–208(e) of the State Government Article.

Other state courts considering this question have held that the decision to grant or deny oral argument at a suppression hearing is within the discretion of the trial judge. *See Brenneman v. State,* 264 Ark. 460, 573 S.W.2d 47, 52 (1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979) (where only witnesses to testify at suppression hearing were two sheriffs testifying for the state, and trial judge could have found that the positions of the parties were adequately revealed by the examination and cross-examination of the witnesses, denial of argument was not an abuse of discretion); *Matter of E.B.,* 111 Wis.2d 175, 330 N.W.2d 584, 592 (1983) (although closing argument may be desirable in a suppression hearing, the decision to allow it is a matter within the discretion of the trial judge); *State v. Gholston,* 55 Or.App. 790, 639 P.2d 1302, 1303–04, *rev. denied,* 292 Or. 863, 648 P.2d 850 (1982) (where grounds for motion to suppress tangible evidence were sufficiently stated in written motion accompanied by points and authorities and single issue was existence of probable cause for arrest, trial judge did not abuse discretion in denying oral argument).

In the case before us, 11 witnesses testified, and material facts were in substantial dispute. The defendant offered evidence that he was severely intoxicated; that he contacted the officers and came to the police station because he was told that a detective whom he knew and trusted wanted to speak to him about the homicide; that he did not tell the officers he killed the victim; and that the officers made up the story that was in the written confession and induced him to affix his signature and initials without reading it by telling him that the sooner he signed it the sooner he could leave.

This Court said in *Dempsey v. State,* 277 Md. 134, 151, 355 A.2d 455 (1976), "that evidence of mental impairment from drugs or alcohol does not *per se* render a confession involuntary, and that a court may admit a confession into evidence if it concludes that it was freely and voluntarily made despite the evidence of mental impairment." The

Supreme Court, in *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), considered a claim that the deficient mental condition of the defendant was itself sufficient to render his confession involuntary. The Court there said that "while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry," *id.* at 165, 107 S.Ct. at 520–21, and that involuntariness in a constitutional sense involves coercive activity by the State resulting in a confession by the defendant, *id.* at 167, 107 S.Ct. at 521. More recently, this Court said, in *Hoey v. State,* 311 Md. 473, 482, 536 A.2d 622 (1988), that

> under Maryland nonconstitutional law a defendant's mere mental deficiency is insufficient to automatically make his confession involuntary. Rather, a confession is only involuntary when the defendant, at the time of his confession is so mentally impaired that he does not know or understand what he is saying.

The defendant in the case before us produced some evidence of coercive state action, as well as evidence of his intoxication at the time. The State denied those allegations, and the trial judge might well have found no police misconduct, and a confession that was entirely voluntary, albeit the product of pangs of conscience unleashed by alcohol- and drug-induced absence of normally protective inhibitions. Nonetheless, serious and important issues were presented by the evidence, and it was no doubt apparent that the decision on the motion was likely to control the outcome of the trial.

Because the State's case may often rise or fall on the ruling at the suppression hearing, a thorough consideration of the evidence and law is necessary to protect the rights both of the defendant and of the public. The law that is involved in a suppression hearing may be complex. There are few areas of criminal law more complicated or dynamic than those involving the Fourth, Fifth, and Sixth Amendments to the Constitution. Furthermore, suppression hear-

ings often resemble full trials, with multiple witnesses for each side testifying and being subject to cross-examination. Proper consideration of the motion would be aided by affording counsel a reasonable opportunity to argue the facts that should be found, the applicable law, and the interaction of those facts with the law. Even brief summation can provide critical analysis of the case, which fosters precision in the trial court's resolution of the motion.

▮ We hold, as a matter of Maryland nonconstitutional law, that when a suppression hearing is held each party ordinarily should be afforded a reasonable opportunity to present argument. The extent of the argument may depend on the complexity of the legal issues, whether evidence has been received, whether there is a conflict in the evidence, and other factors. The trial judge, of necessity, must have great latitude in controlling the duration and limiting the scope of these arguments. The trial judge may limit counsel to a reasonable time, ensure that the argument does not stray unduly from the mark, and terminate argument when continuation would be repetitive or redundant. *Cf. Herring,* 422 U.S. at 862, 95 S.Ct. at 2555.

▮ Under the particular facts of the case before us, the trial judge should have afforded each party a reasonable opportunity for argument. If he did not do so, he erred. We now turn to the question of whether this determination may be made from the record before us.

### III.

Maryland Rule 4–323(c) provides:

For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a

ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

Maryland Rule 8–131(a) provides that an appellate court ordinarily will not decide any issue (except certain issues of jurisdiction) "unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." In *Cherry v. State, supra,* 305 Md. at 640, 506 A.2d 228, drawing upon the teaching of *Covington v. State, supra,* we said:

[T]he failure to afford defense counsel the opportunity to argue the sufficiency of the evidence and the applicable law before a verdict is rendered

1) is not reviewable on direct appeal in the absence of timely protest or objection when the record is not sufficient to show that the failure to protest or object was not knowing and purposeful; but

2) is reviewable under post conviction procedures in which the reasons for the absence of protest or objection at trial may be established through a plenary hearing.

If the post conviction court determines that the reason for the lack of protest or objection was a matter of trial tactics or was otherwise a considered decision on the part of defense counsel, then the defendant is not entitled to relief. If the post conviction court determines that defense counsel desired to present closing argument prior to verdict but was precluded from doing so by the premature announcement of the verdict by the court, the defendant is entitled to a new trial.

In *Covington,* the trial judge rendered a verdict immediately after receiving an agreed statement of facts, without affording counsel an opportunity for argument. No objection was made. On appeal the defendant contended that he had been denied his right to present argument. This Court observed that the applicable rule required the defendant to

"make known to the court an objection to the action of the court at the earliest practicable opportunity." *Covington*, 282 Md. at 543, 386 A.2d 336. We noted that the required objection had been made in *Yopps v. State, supra*, thereby enabling this Court to determine the issue on direct appeal. We pointed out that in the absence of an objection it was not possible to determine from the record whether counsel had waived argument as a matter of trial tactics, or whether the right of closing argument was denied to him. *Covington*, 282 Md. at 545, 386 A.2d 336. We affirmed the judgment, leaving open the defendant's right to seek relief under the Uniform Post Conviction Procedure Act.[2] In *Cherry, supra*, 305 Md. at 644, 506 A.2d 228, we said:

> *Covington* clearly lights the path which may be followed by the defendant in such circumstances. It is the path leading to a plenary hearing under post conviction procedures at which the facts and circumstances surrounding the failure to protest or object can be established and the appropriate determinations made thereon.

The *Cherry* opinion dealt with the separate cases of Mary Cherry and Ronald Jackson. The facts in Ms. Cherry's case were very similar to those in *Covington*. Accordingly, we affirmed Ms. Cherry's conviction without prejudice to her right to pursue post conviction procedures. In Mr. Jackson's case, however, the facts were different. There, after the defendant specifically informed the trial judge that he wished to present argument, the judge entered a guilty verdict after hearing argument only from the prosecutor. As a result, we said, we were not "placed in the position as to whether the complaint might be appellate afterthought." *Cherry*, 305 Md. at 646, 506 A.2d 228. The record clearly disclosed the defendant's desire to present argument and the denial of that right. *Id.* We reversed the conviction and remanded the case for a new trial.

---

2. The Maryland version of the Post Conviction Procedure Act is currently codified at Art. 27, §§ 645A–645J of the Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.)

■    In the case before us, the trial judge offered defense counsel the opportunity to present argument.  Following a brief argument, and colloquy between the judge and defense counsel concerning the judge's concern that the defendant's voluntary act in calling the police distinguished the case from other cases involving action by the police, the following occurred:

[Defense Counsel]: To an extent it does, but it also reflects upon his lack of judgment as a result of having been engaged in the use, heavy use of alcohol and drugs before he contacted the police.  Most sensible people, I would think most sensible people wouldn't call the police and say come and get me and talk about homicide.

The Court: I'm going to cut this real short.  That's a problem for the jury, as far as I'm concerned.  At this time I'm convinced by a preponderance of the evidence that what he—whatever statements he made orally or written were freely and voluntarily given and as a consequence your motion to suppress any and all statements in this case are denied.  Always a pleasure to see you gentlemen.

[Defense Counsel]: And you, Your Honor.

We cannot be certain from this record whether defense counsel had concluded his argument, or whether he wished to present further argument.  In brief colloquy following the judge's ruling, defense counsel twice addressed the court.  At no time did he suggest he that he had additional argument to present, nor did he interpose an objection.  We regard *Cherry* and *Covington* as controlling precedent, and therefore direct that the conviction be affirmed without prejudice to the defendant's right to seek post conviction relief.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY; COSTS IN THIS COURT AND IN THE COURT

**550**

OF SPECIAL APPEALS TO BE PAID BY THE RESPON-DENT.