354

672 A.2d 103

**Fernando HERNANDEZ**

v.

**STATE of Maryland.**

**No. 365, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 28, 1996.

Jesse L. Furtick (Stephen E. Harris, Public Defender, and Claudia A. Cortese, Assistant Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jerry F. Barnes, State's Attorney for Carroll County, Westminster, on the brief), for Appellee.

Argued before WILNER, C.J., and BLOOM and CATHELL, JJ.

WILNER, Chief Judge.

In January, 1991, appellant was charged in the Circuit Court for Carroll County with several serious controlled dangerous substance offenses, including being a drug "kingpin," an offense carrying a minimum mandatory, non-parolable sentence of 20 years. His wife, Bonnie, was also charged with a number of offenses. Appellant and his wife were represented in that case by Stephen Bourexis.

It appears that appellant's best hope for success lay in a motion to suppress the State's evidence. That effort was

unavailing, however. After a five-day hearing before Judge Beck in late August and early September, 1991, his motion was denied. On September 12, pursuant to an apparent plea agreement, he entered a plea of guilty to one count of conspiracy and one count of possession with intent to distribute. On December 3, the plea was accepted by Judge Burns, who sentenced appellant to 14 years in prison. The drug kingpin charge was nol prossed.

On December 13, 1991, appellant filed a motion to withdraw his guilty plea on the ground that it was involuntary. That motion, though referred to in appellant's brief and indexed in the circuit court's certificates, is not in the record before us. As best we can follow the argument, appellant contended that he understood the oral agreement reached with the prosecutor to be that he could plead not guilty and proceed on an agreed statement of facts, thereby allowing him to preserve for appeal the loss of his suppression motion, but that the prosecutor rejected that approach and insisted instead on a guilty plea. There is an exchange of letters in the record supporting that assertion.

Appellant complained that, although his attorneys were made aware of the State's position on September 11, he was not informed until the next day, which was the day he was scheduled to be tried. Faced with "actually pleading guilty or going to trial," he accepted the "altered plea bargain" and entered a plea of guilty. The unfairness of this, according to appellant, stemmed from the fact that the prosecutor had improperly disclosed the terms of the plea agreement to the news media, "which disclosure and subsequent publication made it virtually impossible for the prosecution to return to what the defense maintained was the parties' original agreement." There was, apparently, a story in the local newspaper on September 12 to the effect that appellant had agreed to plead guilty; he testified later that he thought that, if he did not plead guilty as the story indicated, the State would not drop the drug kingpin charge which, under the plea bargain, it had agreed to do.

After a hearing on January 13, 1992, Judge Burns, who had earlier denied appellant's motion to recuse himself, denied the motion to withdraw the guilty plea. He said that he had read the transcript of the September 12 proceeding and recalled various discussions between the prosecutor and defense counsel. He found that the deal from the beginning involved a guilty plea, that there were no surprises on September 12, and that the plea was voluntary.

In February, 1992, appellant filed an application for leave to appeal from the judgment entered on his guilty plea. He complained first about the judge's refusal to recuse himself. He also iterated his complaint that, from discussions had with the prosecutor, he was under the impression that he would be allowed to plead not guilty, with an agreed statement of facts, that the prosecutor informed the press that appellant intended to plead guilty, and that he ultimately pled guilty because he was afraid if he did not the State would proceed to trial under the drug kingpin charge. This, he urged, made the plea involuntary. The application was summarily denied without an assignment of reasons.

In December, 1993, appellant filed, *pro se,* a petition for relief under the Uniform Post Conviction Procedure Act, Md.Code, art. 27, § 645A *et seq.* (PCPA). He contended that his plea was involuntary because he believed that he would be sentenced to only four years, instead of the 14 he received, that Judge Burns erred in failing to determine whether appellant "knowingly understood the proceedings at the time [he] made a plea agreement," and that his representation was inadequate. In an amended petition filed in October, 1994, with the assistance of counsel, he added the complaint that trial counsel was ineffective because he represented both appellant and appellant's wife and failed to advise appellant of the adverse effect of the dual representation.

The petition was heard by Judge Beck on November 18, 1994. At the outset of the hearing, appellant argued that Judge Beck was ineligible to conduct the hearing because he

had decided the motion to suppress. This was based on Md.Rule 4–406(b), which states that a PCPA hearing "shall not be held by the judge who presided at trial except with the consent of the petitioner." Judge Beck denied the request, concluding that deciding a motion to suppress was not the equivalent of presiding at trial. Upon the prosecutor's urging, the court then held that the issue raised with respect to the voluntariness of the guilty plea had been finally litigated when this Court denied appellant's application for leave to appeal from the judgment based on that plea, and he therefore limited the proceeding to the ground raised in the amended petition—whether counsel was ineffective because of his dual representation of appellant and appellant's wife.

At the conclusion of the hearing, the petition was denied, whereupon appellant filed an application for leave to appeal. We granted the application to consider two issues which, given the particular facts of this case, we restate as follows:

(1) Does Rule 4–406(b) preclude a judge who presided over a hearing on a motion to suppress but did not preside over a trial on the merits from hearing a petition under PCPA; and

(2) Has an issue raised in a PCPA petition been "finally litigated" for purposes of Md.Code, art. 27, § 645A(b) when (i) it was raised in an application for leave to appeal from a judgment based on a guilty plea, and (ii) the application was denied summarily without addressing the issue with particularity?

We shall answer both questions in the negative and therefore remand the case for further proceedings on the issues not addressed by Judge Beck.

### Recusal

Rule 4–406(b), as noted, directs that a PCPA hearing not be held by "the judge who presided at trial" unless the petitioner consents. The question is whether the word "trial,"

as used in the rule, is to be read broadly to include proceedings other than actual trial on the merits.

The word itself can be read broadly or narrowly, depending on the context of its use. As appellant points out, for purposes of determining the defendant's right of presence, the right of the public to be present, or the right to offer argument, the word "trial" has been held to include certain motions hearings. *Redman v. State,* 26 Md.App. 241, 337 A.2d 441 (1975); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *State v. Brown,* 324 Md. 532, 597 A.2d 978 (1991). On the other hand, in *Logue v. State,* 282 Md. 625, 628, 386 A.2d 780 (1978), the Court, dealing with the question whether a ruling on a motion to suppress can be revisited at "trial," defined "trial" as "that phase of the proceeding where evidence is submitted to the fact finder in open court to determine the guilt or innocence of a defendant." A perusal of the annotations listed under the word "Trial" in 42A *Words and Phrases* 174–84 and 1995 Supp. 47–50 further illustrates that the scope of the term depends mostly on its context. We are interested in the particular context of Rule 4–406.

The current rule was derived from former Rule BK 44c, which provided that the hearing may be before any judge except a judge "who sat at the trial at which the petitioner was convicted." That language suggests that the disqualification applied only to the judge who presided at the proceeding at which guilt or innocence was determined. In *Taylor v. Director,* 1 Md.App. 23, 25, 226 A.2d 358 (1967), this Court construed Rule BK 44c as referring to "the original trial judge."

A preliminary draft of the new rule carried forth the language of the old one. *See* Court of Appeals Standing Committee on Rules of Practice and Procedure, Minutes of Meeting of October 15/16, 1982, p. 88–89. The Style Subcommittee of the Rules Committee apparently edited out the phrase "at which the petitioner was convicted," for the version submitted to and adopted by the Court of Appeals shows the rule rewritten, to cast it in the negative rather than in the

positive.[1]  There is no recorded explanation for the change, which appears to be one of style.

Apart from the lack of any recorded indication that a substantive change from the former rule was intended, there is good reason to limit the scope of the word to the guilt or innocence proceeding.  It is not uncommon for various preliminary proceedings—including hearings on motions to dismiss for speedy trial violations, motions attacking the sufficiency of the charging document, motions to suppress, motions to join or sever counts or defendants, motions to postpone, motions on waiver of counsel—to be conducted by one or more judges who will not preside at the guilt or innocence proceeding.

If the rule is read to extend beyond that proceeding, either incredibly fine distinctions will have to be made as to its actual breadth or it could serve in many cases to disqualify a majority, or perhaps all, of the judges sitting on a circuit court, especially in the rural counties.  Appellant urges that the term be read to include at least a hearing on a suppression motion because the decision on such a motion is a "crucial step" in a criminal trial.  But so are decisions on a host of other motions.  Appellant suggests that the term be extended that far because the right to counsel extends to such proceedings and because evidence is taken.  That also is true with a variety of other motions.  We are dealing here with a rule requiring automatic, mandated recusal, without regard to any actual bias on the judge's part.  If a judge has some actual bias, whether from participating in an earlier proceeding or otherwise, recusal would be required under the Code of Judicial Conduct;  there is no need to extend the automatic recusal beyond its necessary purpose.  .

---

1.  In its Eighty–Seventh Report to the Court, the Rules Committee showed proposed Rule 4–406(b) making the following changes from the draft approved at the October, 1982 meeting:  "The hearing [may] *shall not* be *held* [before any judge except a] *by the* judge who [sat] *presided* at [the] trial [at which the petitioner was convicted, unless] *except with the consent of* the petitioner [assents to a hearing before such judge]."

■ In this regard, the fact is that the purpose of PCPA proceedings is to challenge "the sentence or judgment" (Md. Code, art. 27, § 645A(a)), and, although the challenge may well be based on some ruling made before the guilt or innocence phase began, it is nonetheless the outcome of that phase that is at issue. It is the "trial" judge who made the ultimate evidentiary rulings, who decided the legal sufficiency of the evidence, who instructed the jury or, in a non-jury case, made the requisite findings of fact, and who imposed the sentence. Predominantly, PCPA proceedings challenge that judge's rulings and decisions. That is the judge, therefore, who is most likely to resist the petitioner's claims of error. That is the judge whom the rule automatically disqualifies.

We find no error in Judge Beck presiding over the PCPA hearing.

### Finally Litigated

■ Md.Code, art. 27, § 645A(a) authorizes certain persons to seek PCPA relief "provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction." The issues of "finally litigated" and waiver are dealt with in subsections (b) and (c) of the statute.

Section 645A(b), in effect defining the term "finally litigated," provides, in relevant part:

"For the purposes of [PCPA], an allegation of error shall be deemed to be finally litigated when an appellate court of the State has rendered a decision on the merits thereof, either upon direct appeal or upon any consideration of an application for leave to appeal filed pursuant to § 645–I of this subtitle...."

Section 645–I is the section permitting a defendant or the State to file an application for leave to appeal from an order granting or denying relief in a PCPA proceeding. It has no application to this case.

Section 645A(c), dealing with waiver, states, in pertinent part:

"For the purposes of [PCPA], an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not the petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, . . . unless the failure to make such allegation shall be excused because of special circumstances."

The condition that an allegation of error not have been previously and finally litigated or waived was in the original enactment of PCPA in 1958, but that Act did not contain any language defining those concepts. *See* 1958 Md.Laws, ch. 44. Those provisions were added in 1965, by 1965 Md.Laws, ch. 442. At that time, persons convicted based on a guilty plea had the same right of direct appeal—then to the Court of Appeals—as persons convicted after a plea of not guilty. Accordingly, there was no reference in either subsection (b) or (c) to guilty pleas or convictions based thereon. New subsection (b) declared an allegation finally litigated "when the Court of Appeals has rendered a decision on the merits thereof, either upon direct appeal or upon any consideration of an application for leave to appeal filed pursuant to section 645–I . . . ." [2]

The law abrogating the right of direct appeal from convictions based on guilty pleas was passed in 1983. *See* 1983 Md.Laws, ch. 295. That, of course, left a gap in both sections (b) and (c) of § 645A. Part of that gap was closed in 1988, when the Legislature amended § 645A(c) to declare an allegation waived if it could have been raised "in an application for leave to appeal a conviction based on a guilty plea." 1988 Md.Laws, ch. 726. That provision was given force in *McElroy*

---

2. The reference to the Court of Appeals was changed after this Court was created.

*v. State*, 329 Md. 136, 617 A.2d 1068 (1993), where the Court held that an allegation of error raised in a PCPA petition would be held waived if the conviction arose from a guilty plea and the petitioner knowingly failed to file an application for leave to appeal from that conviction.

The 1988 law made no change in subsection (b), which therefore still requires, for an allegation to be regarded as finally litigated, an appellate decision either "on the merits . . . upon direct appeal" or upon consideration of an application for leave to appeal under § 645–I. Neither has occurred here.

It is obvious that the issue of the voluntariness of appellant's plea has not been decided "upon direct appeal." Appellant had no right to a direct appeal. He had only the right to seek appellate review through an application for leave to appeal, which he filed. Md.Rule 8–204(f) sets forth the possible dispositions of such an application. The Court may:

"(1) deny the application;

(2) grant the application and affirm the judgment of the lower court;

(3) grant the application and reverse the judgment of the lower court;

(4) grant the application and remand the judgment to the lower court with directions to that court; or

(5) grant the application and order further proceedings in the Court of Special Appeals in accordance with section (g) of this Rule."

Certainly, if this Court, upon consideration of the allegation in question, grants the application and either affirms or reverses the circuit court, it necessarily has decided the merits of the allegation. If we grant the application and conduct further proceedings, whether a particular allegation will be regarded as having been decided on the merits will depend on the eventual outcome of the further proceeding—whether the Court ultimately addresses the merits of that allegation. That may also be the case where the application is granted and the

case is remanded. It may depend on the purpose for the remand.[3]

The problem lies when we deny the application, as we did here. Applications are denied for any of several reasons. Many are untimely; many are deficient because they do not "contain a concise statement of the reasons why the judgment should be reversed or modified" or "specify the errors allegedly committed by the lower court," as required by Rule 8–204(b)(2). Some are denied because, after examining the record, we find that the relevant facts are not as alleged by the applicant and do not support his allegations of error or entitle him to any relief. The applicant may, for example, allege that the judge said or did something wrong, yet when we examine the record, we find that the judge never actually said or did the thing alleged.

In the last five years, the Court of Special Appeals has experienced a 15% increase in the number of appeals decided (1,829 in FY 1991 to 2,105 in FY 1995) and a 21.7% increase in the number of full Opinions filed (1,351 in FY 1991 to 1,644 in FY 1995). Since 1992, when review of orders revoking probation became discretionary rather than of right, we have experienced a 163% increase in the number of applications for leave to appeal (193 in FY 1992 to 509 in FY 1995). *See Annual Report of the Maryland Judiciary* (1994–1995).

To assist in the efficient handling of both the gross caseload and the increase in it, we have generally not specified any reasons when we summarily deny an application for leave to appeal, but simply note that the application has been read and considered and is denied. That is what we did with appel-

---

**3.** In a number of instances, this Court, on consideration of an issue raised in an application for leave to appeal, has concluded that we do not have enough information to decide the merits of the issue and, for that very reason, has remanded the case for further fact-finding or further explanation of reasons. When that is done, we normally make clear that the applicant may file another application for leave to appeal if, after the further proceeding in the circuit court, he or she is still aggrieved. Technically, the pending application must be granted in order for us to order the remand, but we have never regarded such a grant as a decision on the merits of the allegation itself.

lant's 1992 application. Obviously, that tells no one what we thought of any particular allegation in the application.

It is at least arguable that any denial of an application for leave to appeal is not a determination on "direct appeal," even if we purport to deny the application for lack of merit, for, in denying the application, we have, in fact, precluded a direct appeal. We need not make that holding here, for it is clear to us that a summary denial without the assignment of any reason cannot constitute a decision on the merits of the allegation. The hearing judge was wrong in concluding otherwise. We shall remand so that he can consider the allegations presented that he failed to consider.[4]

ORDER DENYING RELIEF VACATED; CASE REMANDED TO CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS; CARROLL COUNTY TO PAY THE COSTS.

---

4. The General Assembly, which addressed the effect of a knowing failure to file an application for leave to appeal from a judgment based on a guilty plea, by declaring it a waiver, could also determine the effect of a denial of such an application. It could declare a denial to be a final litigation in all cases, in no cases, or in only those cases where we expressly state that the denial is due to lack of merit in the allegations contained in the application. It is a matter of substantive law with jurisprudential consequences. If, to avoid the prospect of allowing a defendant to litigate these kinds of issues in a post conviction proceeding, we are forced to grant applications in guilty plea, post conviction, and violation of probation cases, even if to affirm the order denying relief, we would be called upon to write Opinions in each of those cases, which would be a significant burden. Indeed, it was precisely to avoid that burden that the Legislature abrogated the right of appeal in those cases in the first instance. On the other hand, it makes little sense to create double work—to review an application in the guilty plea or violation of probation case, deny it, and have it come back through an application for leave to appeal from the denial of post conviction relief.