617 A.2d 1068

**John Harold McELROY**

v.

**STATE of Maryland.**

**Edward JEFFERSON**

v.

**STATE of Maryland.**

**Nos. 17, 18, Sept. Term, 1992.**

Court of Appeals of Maryland.

Jan. 19, 1993.

McElroy Motion for Reconsideration
Denied March 9, 1993.

Gary S. Offutt, Norman Handwerger, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

In each of these cases we are concerned with whether the petitioner, who had been convicted upon a guilty plea, waived his right to post conviction relief under our Post Conviction Procedure Act (PCPA), Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 645A–J, by failing to raise the alleged error which resulted in his conviction by application for leave to appeal that conviction and the sentence thereon to the Court of Special Appeals.

## I.

Article 27, § 645A provides in pertinent part:

"(a) *Right to institute proceeding to set aside or correct sentence; time of filing initial proceeding.*—(1) Subject to the provisions of paragraphs (2) and (3) of this subsection, any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation, including any person confined or on parole or probation as a result of a proceeding before the District Court who claims that the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum

authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error which would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common-law or statutory remedy, may institute a proceeding under this subtitle in the circuit court for the county to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction.

.        .        .        .        .

"(c) *When allegation of error deemed to have been waived.*—(1) For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not the petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

"(2) When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."

We construed these provisions governing waiver in *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978). In that case, we held that the legislature employed the concept of an intelligent and knowing waiver in Art. 27, § 645A(c) in the narrow sense employed by the Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Johnson v. Zerbst,* the Supreme Court stated:

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intelligent relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (footnotes omitted).

■■■■ We reasoned that the legislature did not require intelligent and knowing waiver in the case of all errors, but only with respect to errors which deprived a petitioner of fundamental constitutional rights.[1] As to those fundamental rights, intelligent and knowing waiver requires that the petitioner's knowledge of the right and the petitioner's personal waiver of the right be reflected on the record. As to lesser or non-fundamental rights, the petitioner will be deemed to have waived any claim of error if petitioner or petitioner's counsel failed to exercise a prior opportunity to

---

1. In *Curtis,* we recognized fundamental constitutional rights requiring an intelligent and knowing waiver to include: Sixth Amendment right to counsel (*Johnson v. Zerbst, supra*); rights surrendered by a guilty plea (*Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)); rights under double jeopardy clause (*Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)); self-incrimination privilege in congressional hearing (*Emspak v. United States,* 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955)); and right to trial by jury (*Adams v. United States,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

raise it notwithstanding a lack of personal knowledge of the right of which petitioner was deprived [2], except when the failure to allege the error is excused by special circumstances.

When an allegation of error affecting fundamental constitutional rights could have been made by petitioner in

2. In *Curtis*, we distinguished the intelligent and knowing waiver standard for fundamental constitutional rights from the waiver requirement for lesser rights. With regard to the latter, we adopted the view of the Supreme Court that failure of the defendant or counsel to affirmatively assert the right did not require an intelligent and knowing waiver under *Johnson v. Zerbst*. We referred to several examples: absent showing of cause and actual prejudice default of legitimate state procedural requirement upheld (*Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976)); right not to be tried in jail clothing (*Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)); no protection of work product doctrine when defendant's investigator called as defense witness (*United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)); voluntary consent to search (*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); race bias in composition of federal grand jury prior to trial pursuant to procedural rules (*Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973)).

This position is further reflected in our subsequent holdings, *e.g.*, defect in criminal information not one of constitutional dimension (*Treece v. State*, 313 Md. 665, 547 A.2d 1054 (1989)); cautionary jury instruction regarding defendant's Fifth Amendment right not to testify is a constitutional protection waivable by the defendant or counsel (*Hardaway v. State*, 317 Md. 160, 562 A.2d 1234 (1989); *Martinez v. State*, 309 Md. 124, 522 A.2d 950 (1987)); failure to exercise right of allocution during death sentencing deemed waiver of non-fundamental right (*State v. Calhoun*, 306 Md. 692, 511 A.2d 461 (1986), *cert. den.*, 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987)); failure to object to State's use of inflammatory language in closing argument (*State v. Tichnell*, 306 Md. 428, 509 A.2d 1179 (1986)); failure to raise jury instruction issue (*Foster, Evans, & Huntington v. State*, 305 Md. 306, 503 A.2d 1326 (1986)); defendant's failure to demand an available grand jury transcript, and failure to preserve objection to trial court's failure to order its production, resulted in waiver of non-fundamental right (*Jones v. State*, 297 Md. 7, 25, n. 1, 464 A.2d 977 (1983)); right to sequestered jury during deliberation period not elevated to intelligent and knowing waiver status (*State v. Magwood*, 290 Md. 615, 432 A.2d 446 (1981)); defendant's silence as to presence at bench conference would constitute waiver absent implication of other constitutional rights requiring an intelligent and knowing waiver (*Williams v. State*, 292 Md. 201, 438 A.2d 1301 (1981)); failure to

a prior proceeding, Art. 27, § 645A(c)(2) provides that "there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation." The burden of producing evidence to rebut the presumption of waiver is placed upon the petitioner. *Curtis*, 284 Md. at 139, 395 A.2d at 469.

## II.

## A.

On January 9, 1989, John Harold McElroy appeared with counsel for trial in the Circuit Court for Baltimore County on indictments charging him *inter alia* with distribution of Phencyclidine (PCP). When McElroy's case was called, the Assistant State's Attorney advised the court:

"There have been plea negotiations between myself and counsel. The pleas would be in 5347, distribution of PCP, Your Honor, a guilty plea that the State anticipates will result in a sentence within the guidelines of four years to eight years. And in return, nol pros the balance of 88–5347 and all the counts in 5347. The defense, of course, is free to argue for less."

Thereafter, the court questioned McElroy and determined that he was 30 years of age, possessed a tenth grade education, and could read and write the English language. The court's inquiries also established that McElroy had never been a patient in a mental institution and that he was not then under the influence of alcohol or any drugs. The colloquy continued:

"THE COURT: By pleading guilty in this case, you subject yourself to 20 years and $25,000 fine on the first count, which charges that you did distribute PCP and will be requesting a possible presentence, since the guidelines recommend a guideline of four years to eight years. Your attorney is free to argue for anything less than that

---

object to improper alibi evidence jury instruction (*Davis v. State*, 285 Md. 19, 400 A.2d 406 (1979)).

and, of course, the Court is not bound by any sentence, frankly, up from probation to the maximum sentence.

"You understand everything about the plea agreement?

"THE DEFENDANT: Yes."

The court continued its inquiry of McElroy assuring itself that he understood the nature of the several rights he was giving up by pleading guilty. The court then concluded its questioning:

"THE COURT: And lastly, your guilty plea limits yourself on appeal. You still have a right to the Court of Special Appeals to review it, but to do so it would be limited to four grounds. The first is the jurisdiction of this Court; the second is whether or not I gave an illegal sentence; the third is whether or not you are freely and voluntarily entering this plea and I am sure being represented by Mr. Shaw, do you have any questions you want to ask of him or the Court prior to proceeding?

"THE DEFENDANT: No, sir.

"THE COURT: All right. The Court is satisfied that the plea is freely, voluntarily and intelligently given and will accept the plea of guilty on the first count. Let's hear the basis for the plea. You may have a seat."

After hearing the statement of facts, the court accepted the guilty plea and found McElroy guilty of distribution of PCP.

At the request of McElroy's attorney, the trial court ordered a pre-sentence investigation which revealed that Mr. McElroy had an extensive criminal record. Nevertheless, at the sentencing hearing the prosecutor complied with his part of the plea bargain and recommended a sentence of four to eight years, although in light of the pre-sentence report the defendant was subject to a twelve to twenty year term under the sentencing guidelines.

On March 30, 1989, McElroy was sentenced to fifteen years imprisonment, commencing October 26, 1988, and was advised he had thirty days within which to apply for leave to appeal to the Court of Special Appeals. Motions for modification or reduction of sentence were filed and denied,

but no application for leave to appeal from the conviction and sentence on his guilty plea was filed.

On August 14, 1990, McElroy filed a petition for post conviction relief. He asserted that his guilty plea was not entered knowingly and intelligently because the trial judge had failed to comply with Maryland Rule 4–243[3] which

---

3. Rule 4–243 provides in pertinent part:

"(a) **Conditions for Agreement.**—The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

"(1) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

"(2) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

"(3) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

"(4) That the State will not charge the defendant with the commission of certain other offenses;

"(5) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

"(6) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

"(b) **Recommendations of State's Attorney on Sentencing.**—The recommendation of the State's Attorney with respect to a particular sentence, disposition, or other judicial action made pursuant to subsection (a)(5) of this Rule is not binding on the court. The court shall advise the defendant at or before the time the State's Attorney makes a recommendation that the court is not bound by the recommendation, that it may impose the maximum penalties provided by law for the offense to which the defendant pleads guilty, and that imposition of a penalty more severe than the one recommended by the State's Attorney will not be grounds for withdrawal of the plea.

"(c) **Agreements of Sentence, Disposition, or Other Judicial Action.**—

"(1) *Presentation to the Court.*—If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs."

governs plea bargains. Specifically, he alleged that that trial judge had not advised him that the court was not bound by the prosecutor's recommendation as to sentence and that, if the court imposed a sentence more severe than the one recommended, McElroy had no right to withdraw his plea. Md.Rule 4–243(b).

A hearing was held on November 1, 1990, before the Circuit Court for Baltimore County. McElroy offered no evidence at that hearing. On November 28, 1990, the hearing judge denied McElroy's petition. McElroy filed a timely application for leave to appeal that denial. The Court of Special Appeals granted the application. The intermediate appellate court requested the parties to address the issue of whether McElroy had waived his right to post conviction review by his failure to raise his claim in an application for leave to appeal the judgment entered on his guilty plea. After hearing argument, the Court of Special Appeals held that McElroy had waived his right to post conviction review. 90 Md.App. 48, 599 A.2d 1215 (1992). We issued our writ of certiorari to review that decision.

### B.

Md.Code (1974, 1989 Repl.Vol.), § 12–302(e) of the Courts and Judicial Proceedings Article requires that a person seeking review of a conviction by a circuit court based upon a guilty plea file an application for leave to appeal to the Court of Special Appeals. Md.Rule 8–204(b)(1) provides that such application must be filed with the clerk of the circuit court within 30 days from the judgment from which the appeal is sought. Despite these provisions, McElroy did not seek direct review of his conviction by the Court of Special Appeals. As we noted earlier, he was advised of his right to seek appellate review of the conviction which would result from the court's acceptance of his guilty plea before the trial court accepted that plea. Again, after the trial judge sentenced him, the judge advised him that "you have thirty days to take an appeal to the Court of Special Appeals."

Under these circumstances the State argues that McElroy waived the claim he makes in his petition for post conviction relief, citing § 645A(a) and (c) of the PCPA, *supra.* On the other hand, McElroy asserts that no waiver has occurred because (1) the waiver provisions do not apply where no application for leave to appeal was taken from a conviction based upon a guilty plea; (2) he has rebutted the presumption that he intelligently and knowingly failed to raise the issue previously; and (3) he has shown special circumstances excusing his failure to raise his allegation of error previously.

McElroy's first argument was not made to the Court of Special Appeals nor in his petition for certiorari addressed to this Court. Consequently, the issue is not before us, and we decline to address it. *Maus v. State,* 311 Md. 85, 105, 532 A.2d 1066, 1076 (1987).

With regard to McElroy's second and third arguments, he asserts, the State concedes, and we agree that his claim that he was convicted on a guilty plea which was not knowingly and intelligently entered is one that asserts the deprivation of a fundamental constitutional right. *Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274, 279–80 (1969); *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (1962); *Hersch v. State,* 317 Md. 200, 206, 562 A.2d 1254, 1256 (1989); *State v. Priet,* 289 Md. 267, 275, 424 A.2d 349, 360 (1981). Nevertheless, we are not persuaded that McElroy has rebutted the presumption set forth in Art. 27, § 645A(c)(2) that he "intelligently and knowingly failed to make" the contention he raises in the instant post conviction proceeding by failing to seek direct review of his conviction and sentence by the Court of Special Appeals. The record of the trial court proceedings show that the trial judge advised McElroy of his right to appellate review of the conviction which would result from the court's acceptance of his guilty plea before that plea was accepted, and McElroy assured the trial judge that he had no questions about that right. At the post conviction hearing, no evidence was

offered to rebut the presumption of intelligent and knowing waiver mandated by Art. 27, § 645A(c)(2).

*Curtis v. State, supra,* provides a good illustration of the kind of evidence that must be offered to rebut the presumption of waiver provided for in Art. 27, § 645A(c)(2). In *Curtis,* the petitioner had been convicted of first degree murder at a trial where he was represented by court appointed counsel. His conviction was affirmed by the Court of Special Appeals and this Court denied certiorari. Thereafter, represented by different counsel, Curtis filed his first petition for post conviction relief. No allegation was made in that petition, or at the hearing on it, that Curtis had been deprived of his Sixth Amendment right to genuine and effective representation of counsel at his trial or on direct appeal. The hearing court denied any post conviction relief.

Curtis, represented by a third attorney, then filed a second petition for post conviction relief. He claimed that he had been denied genuine and effective representation by counsel at his trial, on direct appeal, and at the first post conviction proceeding. The State moved to dismiss the second post conviction proceeding on the ground that Curtis had waived the claim made therein by failing to raise the issue earlier. At the hearing on that motion, petitioner's counsel proffered the following facts:

"3. The issue of ineffective assistance of counsel (trial counsel, counsel on direct appeal and counsel at petitioner's first post-conviction hearing) has never been raised by petitioner in any prior court case.

"4. Petitioner was never advised by trial counsel or by counsel appointed on his prior post-conviction case that petitioner should have raised the issue of ineffective assistance of counsel in his first post-conviction petition.

"5. Petitioner was never advised that trial counsel may have been ineffective for his failure to raise the defense of voluntary intoxication as reducing the crime from first degree to second degree murder; nor was petitioner ever advised that trial counsel may have been ineffective for his failure to raise the issue of "diminished

responsibility" or for his failure to raise on direct appeal the evidentiary issue dealing with the "double hearsay" testimony of Mary Wedge and Mildred Curtis.

"6. Petitioner is a layman with a seventh grade education and an I.Q. of 72 (borderline range of intelligence). Evidence had been introduced at petitioner's trial that petitioner was a chronic alcoholic who had suffered some brain damage as a result of extended drinking for nineteen (19) years. Petitioner was not aware that he should have raised the issue of ineffective assistance of counsel at his first post-conviction hearing.

"7. Petitioner relied entirely on his court-appointed counsel at trial, on direct appeal ... and in his first post-conviction case. Petitioner would have raised the issue of ineffective assistance of counsel in his prior post-conviction case had petitioner known that there was a possible issue of ineffective assistance of counsel." *Id.* 284 Md. at 135–36, 395 A.2d at 466–67.

Accepting those proffered facts as true for purposes of ruling on the State's motion, the hearing judge dismissed the petition. The Court of Special Appeals granted the petitioner's application for leave to appeal and affirmed. *Curtis v. State,* 37 Md.App. 459, 381 A.2d 1166 (1977). This Court reversed that decision. Judge Eldridge, writing for the Court, explained:

"The proffered facts, accepted as true by the circuit court for purposes of the State's motion to dismiss on the ground of waiver, clearly disclosed that Curtis did not "intelligently and knowingly" fail to previously raise the matter of his trial counsel's alleged inadequacy. Therefore, the issue cannot be deemed to have been waived." *Id.* 284 Md. at 151, 395 A.2d at 475.

Unlike the petitioner in *Curtis,* McElroy made no effort to rebut the presumption that he waived the claim that his guilty plea was not knowingly and intelligently entered by failing to raise that issue in an application for leave to appeal the conviction and sentence based on his guilty plea to the Court of Special Appeals. Likewise, there is no

evidence in this record of any special circumstances that would excuse his failure to seek direct appellate review of his conviction and sentence. He was advised that the Court of Special Appeals was an available resource for that purpose and told that he had to seek such review within 30 days of his conviction. He assured the trial judge that he understood that right. For these reasons, he has failed to meet the burden imposed upon him by Art. 27, § 645A(c)(1) to prove such special circumstances. *Cf. Washington v. Warden*, 243 Md. 316, 220 A.2d 607 (1966) (special circumstances found where post conviction petitioner proved that he had not raised issue in earlier post conviction proceeding because he was suffering from a mental illness which prevented him from assisting his counsel).

In summary, McElroy waived his right to relief under the PCPA on his claim that his guilty plea was not knowingly and intelligently made by failing to raise that issue in an application for leave to appeal to the Court of Special Appeals. Furthermore, his failure to seek that appellate review was not excused by any special circumstances.

## III.

### A.

In the Circuit Court for Baltimore City on December 4, 1989, Edward Jefferson pleaded guilty to second degree murder, use of a handgun in a crime of violence, and assault. These pleas were entered pursuant to a plea agreement which provided that the total of the sentences to be imposed for these offenses would not exceed 30 years. Furthermore, the prosecutor agreed that if the court would accept the pleas with the limitation on the sentences the State would make no recommendation as to length of the sentences and that defense counsel would be free to argue for lesser sentences. The pleas were accepted after the trial judge assured herself by inquiry directed to Jefferson that he was entering the pleas freely, voluntarily, and with full knowledge of the consequences. After hearing a factu-

al basis for the pleas, the court accepted them and Jefferson was convicted of the crimes to which he had pleaded guilty. The trial judge ordered a presentence report and set a date for sentencing.

At the sentencing hearing on January 9, 1990, after defense counsel argued for sentences totalling less than 30 years and Jefferson made an allocution, the court addressed the assistant state's attorney:

"THE COURT: Within the perimeters of the plea agreement, does the State want to say something?

"[ASSISTANT STATE'S ATTORNEY]: Only, Your Honor, that there is very little in the presentence report which would mitigate toward a lesser sentence than that which was agreed upon."

The trial judge imposed a 30 year sentence for second degree murder, a concurrent 15 year sentence for the handgun offense, and a concurrent 10 year sentence for the assault. Jefferson filed a timely application for leave to appeal from those judgments to the Court of Special Appeals. In that application Jefferson raised 12 issues. His application for leave to appeal was denied. Subsequently, he filed the petition for post conviction relief in the instant case, alleging that his guilty pleas were not voluntary since they were induced by a plea agreement which was breached by the prosecutor at the sentencing hearing. Specifically, Jefferson posits that the State breached the agreement to make no recommendation at sentencing when the assistant state's attorney commented that "there is very little in the presentence report which would mitigate toward a lesser sentence than that which was agreed upon."

The post conviction hearing judge concluded that the State had breached the plea agreement and that Jefferson's claim for relief based upon that breach was not waived by his failure to raise the issue in his application to the Court of Special Appeals for leave to appeal from the judgments entered on his guilty pleas. Consequently, the hearing judge ordered that Jefferson should be given the option of

being re-sentenced before another judge or of withdrawing his guilty pleas and proceeding to trial. The Court of Special Appeals granted the State's application for leave to appeal from that order and vacated the order granting Jefferson post conviction relief.

## B.

Jefferson did not testify at the post conviction hearing nor was any other evidence offered to rebut the presumption created by Art. 27, § 645A(c)(2):

> "When an allegation of error could have been made by a petitioner before trial, at trial, ... in an application for leave to appeal a conviction based on a guilty plea, ... but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."

The alleged breach of the plea agreement by the State was fully documented in the record of his guilty pleas on December 4, 1989, and the sentencing hearing on January 9, 1990. Consequently, the claim which Jefferson made in the post conviction petition should have been made in his application for leave to appeal addressed to the Court of Special Appeals. For the reasons set forth in Part II.B., *supra*, Jefferson, like McElroy, and unlike the petitioner in *Curtis v. State*, *supra*, is deemed to have intelligently and knowingly waived his right to present his claim that the State's breach of the plea agreement induced his guilty pleas and denied him the fundamental constitutional rights which he surrendered when entering those pleas. *Cf. Miller v. State*, 272 Md. 249, 255, 322 A.2d 527, 530 (1974). Also, he has failed to prove any special circumstances which would excuse that waiver.

## IV.

We agree with the Court of Special Appeals that the claims of the post conviction petitioners in both of these cases have been waived under the provisions of § 645A(c) of

the PCPA. Accordingly, we shall affirm the judgments of the intermediate appellate court in both cases.

JUDGMENTS AFFIRMED, WITH COSTS.

CHASANOW and ROBERT M. BELL, JJ., dissent.

ROBERT M. BELL, J., dissenting in which CHASANOW, J. concurs.

In each of these cases, the petitioners pled guilty to a charged offense pursuant to a plea agreement. In *McElroy*, the agreement called for the State to recommend "a sentence within the guidelines of four years to eight years", the range computed on the basis of information available during the negotiations, and to *nolle pros* the remaining charges. The defendant was permitted "to argue for less." In *Jefferson*, the plea agreement contemplated a sentence not to exceed 30 years. The State bound itself to make no recommendation as to length of sentence, while the defense could argue for a lesser sentence. Neither defendant was informed, by the trial court or anyone else, during the voluntariness inquiry, *see* Maryland Rule 4–242(c), that he could withdraw his plea in the event that the court did not accept either the State's recommendation or if the State breached the plea agreement.

McElroy was sentenced, following a pre-sentence investigation. The guidelines range computed on the basis of the information developed during that investigation was different and, indeed, substantially higher, than that on the basis of which the plea was negotiated. McElroy was sentenced within the higher guidelines range.[1] While he was twice advised by the court of the right to appeal and the limited issues he could raise on that appeal, at no time was McEl-

---

1. Although the majority holds that the State abided by its plea agreement, the record reflects that, to the extent it did, it was not unequivocal. While indeed recommending a sentence between four and eight years "because that is what is determined by the Guidelines to be," which it would "stick with," the State did not miss an opportunity to point out what was quite obvious, that "the Guidelines determined by the presentence are twelve to twenty years."

roy told that the right to appeal was not absolute, being dependent solely on the discretion of the intermediate appellate court. *See* Maryland Code (1974, 1989 Repl.Vol.) § 12–302(e) of the Courts & Jud.Proc. Article; Md.Rule 8–204(f)(1)–(5). *See also* Maryland Code (1974, 1989 Repl. Vol.1992 Cum.Supp.) § 12–202(4) of the Courts & Jud.Proc. Article.[2] McElroy was never told that the right he actually had was the right to file an application for leave to appeal. Nor was he told, moreover that he had to file the application and raise, in it, all possible issues justifying review and for reversal in order to preserve any issue for post conviction review.

Jefferson was also sentenced after a presentence investigation. At the sentencing hearing, after his counsel had argued for a lesser sentence than that recommended, the State, in apparent disregard of the agreement to make no recommendation of a specific sentence, stated:

> "Only, Your Honor, that there is very little in the presentence report which would mitigate toward a lesser sentence than that which was agreed upon."

The court sentenced Jefferson to 30 years imprisonment, noting in the process that "what the State's Attorney just said seems to be utterly correct." Both during the voluntariness inquiry and after sentence was imposed, Jefferson was advised that he could apply for leave to appeal. The court also told him that the probable consequences of such an application would be that it would be denied. Like McElroy, Jefferson was not informed that the consequences of not filing an application or of not including within it, all possible reversible error was to waive the right to post conviction relief as to all issues not raised.

---

**2.** Section 12–202(4) prohibits the Court of Appeals from granting certiorari in a case in which the Court of Special Appeals has denied or granted leave to appeal from the judgment entered in a guilty plea proceeding. That prohibition extends only to the intermediate appellate court's action in granting or denying the application. *Williams v. State,* 292 Md. 201, 207, 438 A.2d 1301, 1303 (1981). This Court may always review that court's decision on the merits. *Id.*

Both petitioners subsequently filed petitions for post conviction relief, McElroy without having first sought leave to appeal from the guilty plea and Jefferson after his application for leave to appeal had been denied by the Court of Special Appeals. In each case the Court of Special Appeals granted leave to appeal the circuit court's decision on the post conviction petition. In *McElroy*, the circuit court denied post conviction relief and in *Jefferson*, the lower court granted the relief. In each case, the intermediate appellate court held that the petitioners had "knowingly and intelligently waived their right to challenge the validity of the guilty plea proceedings in the lower court."

The majority holds, as a matter of law, that failure to raise breach of the plea agreement by application for leave to appeal from a guilty plea, whether or not an application was, in fact, filed, is a "knowing and intelligent" waiver of the issue.[3] According to the majority, where a petitioner who has pled guilty does not file an application for leave to appeal or, if he or she does file one, does not raise the issue presented in the post conviction proceeding, the presumption of waiver obviates the need for the trial court to make any factual determination whether the inaction or omission was knowing and intelligent. Unless the petitioner adduces evidence of special circumstances which would excuse his or her failure to file an application for leave to appeal, the issue conclusively is waived. In other words, the majority takes the position that the presumption of knowing and intelligent waiver, *see* Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 645A(c), though characterized as rebuttable is, in effect and in fact, conclusive; a defendant who fails to allege the issue on which post conviction relief is sought in an application for leave to appeal from a guilty plea, in the absence of the offer of affirmative evidence or proffer, can rebut the presumption only if he or she can establish special

---

3. In each case, the petitioner had a valid argument that the State breached its plea agreement, which the majority holds they waived by failing to make the argument in an application for leave to appeal.

circumstances to excuse the failure to raise the issue. This is much like the argument that the State made, the Court of Special Appeals adopted, and we rejected, in *Curtis v. State*, 284 Md. 132, 138–39, 395 A.2d 464, 468 (1978).[4]

I disagree most emphatically.[5] The presumption of waiver is, by the very terms of the statute, a rebuttable one.

---

4. As reported in that case:

   The State maintains, as the Court of Special Appeals held, that under the above language, the mere failure to raise an issue results in a presumption of waiver, and only a finding of "special circumstances" will rebut the presumption or alleviate the effect of the waiver. Moreover, the State argues that facts such as those proffered and accepted in this case, showing that petitioner did not "intelligently and knowingly" fail to previously raise the question of inadequacy of trial counsel, do not constitute "special circumstances" rebutting the presumption.

   This interpretation of § 645A(c) by the State and the Court of Special Appeals is manifestly erroneous.

5. Although I think the majority's position is unsupportable and hence, for the sake of argument I will address only the issue it does, I think it appropriate to note that the argument advanced by petitioner McElroy is properly before the Court. The majority declines to address whether the petitioner McElroy's argument that the waiver provisions do not apply when the defendant does not seek leave to appeal from a guilty plea, holding that it was neither made in the Court of Special Appeals or in his petition for certiorari. In taking that position, the majority is simply wrong.

   Whether McElroy raised the issue on his own in the Court of Special Appeals is not dispositive. The intermediate appellate court's decision very clearly was premised upon its interpretation of the statutory scheme as requiring the filing of an application for leave to appeal as a prerequisite to review of the guilty plea judgment. *McElroy v. State*, 90 Md.App. 48, 599 A.2d 1215, *cert. granted*, 326 Md. 435, 605 A.2d 137 (1992). In addition to noting how inappropriate it was for the petitioner to proceed by way of post conviction, rather than by filing an application for leave to appeal from the guilty plea, that court's opinion acknowledged that the court, itself, asked the parties to brief two questions, each pertaining to, though not in specific terms, the construction of Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 645A(c):

   (a) Whether a defendant who was convicted on a plea of guilty and who desires appellate review of the conviction based on facts that would be apparent in the record of the guilty plea proceeding must seek such review by an Application for Leave to Appeal pursuant to Cts. & Jud.Proc. art. § 12–302(e); and

   (b) Whether a claim of error in such a case that could have been raised by an Application for Leave to Appeal filed pursuant to § 12–

302(e) is waived for purposes of subsequent review under the Post Conviction Procedure Act if it was not so when raised.

*McElroy,* 90 Md.App. at 53, 599 A.2d at 1217–18. The majority acknowledges that this is so. At 144. In point of fact, therefore, the issue was raised in, and also specifically decided by, the intermediate appellate court.

Moreover, in his certiorari petition, McElroy presented five questions. Questions 3 and 4 closely track the questions the Court of Special Appeals required the parties to address. They are:

3. Must a defendant who was convicted on a plea of guilty and who desires appellate review of the conviction based on facts that would be apparent in the record of the guilty plea proceeding seek such review by an Application for Leave to Appeal pursuant to CTS. & JUD.PROC.CODE ANN. §§ 12–302(e)?

4. Is a claim of error in such a case that could have been raised by an Application for Leave to Appeal filed pursuant to CTS. & JUD.PROC.CODE ANN. §§ 12–302(e) waived for purposes of subsequent review under the Post Conviction Procedure Act if it was not so raised?

Taken together, or even singly, they adequately raise the issue of the proper construction of § 645A(c); necessarily implicit in these questions is whether a defendant must seek application for leave to appeal in order to obtain post conviction proceedings review of an issue that could have been reviewed on application for leave to appeal. Indeed, McElroy's question 5, which assumes, *arguendo,* that a claim of error ordinarily must be raised by application for leave to appeal from a guilty plea, also adequately presents the issue; having made that assumption, it asks whether waiver occurs even when the defendant is misadvised as to the nature and scope of the post trial review procedure. More fundamentally, summing up the reasons why this Court should grant certiorari, McElroy noted: "Petitioner's case provides this Court with an unusual opportunity to construe the waiver provisions of the Uniform Post Conviction Act" and

"[t]he analysis of [the intermediate appellate court] in Petitioner's case ... seems internally inconsistent, for it provides that a defendant waives a right to a remedy for not understanding his plea agreement because he fails to note an application for leave to appeal, despite the fact that this very lack of knowledge presumably means he will not know that he had any basis for requesting the appeal."

Unless § 645A requires the filing of an application for leave to appeal to preserve an error alleged to have occurred in the proceedings pursuant to which the application is required, the petitioner McElroy, who did not file such an application, cannot be said to have waived the allegations of error presently before the Court. I believe that § 645A does not so require. I reach this conclusion by application of the ordinary rules of statutory construction.

Those rules require us to look no further than to the language the Legislature used to convey the meaning it wished the statute to be interpreted to have. When those words are clear and unambiguous, ordinarily we need not go any further, *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991); *G. Heileman Brewing Co. v. Stroh*

*Brewery Co.,* 308 Md. 746, 755, 521 A.2d 1225, 1230 (1987); *In re Criminal Investigation No. 1–162,* 307 Md. 674, 685, 516 A.2d 976, 982 (1986); *Comptroller of Treasury v. Fairchild Industries, Inc.,* 303 Md. 280, 284, 493 A.2d 341, 343 (1985), although, in the interest of completeness, we may look at the purpose of the statute and compare the result obtained by use of the plain language with the purpose of the statute. *Sabatier v. State Farm Mut. Auto Ins. Co.,* 323 Md. 232, 250, 592 A.2d 1098, 1107 (1991); *Mustafa,* 323 Md. at 73, 591 A.2d at 485; *Baltimore County Coalition Against Unfair Taxes v. Baltimore County,* 321 Md. 184, 203, 582 A.2d 510, 519 (1990); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989); *Kazorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987). We are also to give effect to the entire statute, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. *Bd. of Educ. of Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 389, 444 A.2d 1024, 1027 (1982); *Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549, 553 (1980). Finally, we seek to give the statute a reasonable interpretation, not one that is illogical or incompatible with common sense. *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Ervin and Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985).

When these rules of statutory construction are applied, it is clear that filing an application for leave to appeal, in which is included any and all allegations of error a defendant may have, is not a condition precedent to seeking post conviction relief.

Section 645A(c)(1) makes clear that, unlike in the case of direct appeal, a defendant does not waive an allegation of error that could have been raised by way of application for leave to appeal simply by not filing such an application. That section provides:

> For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (*whether or not the petitioner actually took such an appeal*), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner. (Emphasis added).

Section 645A(c)(2), largely tracking the language of 645A(c)(1), is of similar effect. This difference in treatment of direct appeals and applications for leave to appeal clearly indicates that the Legislature intended that the presumption apply only in the case of direct appeals. To construe the statute any other way requires that language similar to that used in connection with direct appeals be added to the provision pertaining to applications for leave to appeal.

Moreover, § 645A(c)(1) and (2) were amended in 1988 to be consistent with legislation enacted in 1983, *see* Ch. 295, Acts of 1983, which

The presumption may be rebutted, I believe by the circumstances evident on the record, not simply by offering testimony or other evidence, to the contrary.

In *Jefferson,* unlike in *McElroy,* the applicant filed an application for leave to appeal.[6]  He acted without benefit

---

added subsection (e) to Maryland Code (1980, 1983 Repl.Vol.) § 12–302 of the Courts & Judicial Proceedings Article, and made judgments entered on guilty pleas subject to review only on application for leave to appeal.  *See* also Ch. 726, Acts of 1988, the preamble to which provides:

> FOR the purpose of clarifying that, if a person fails under certain circumstances to allege an error in an application for leave to appeal a certain conviction, the allegation is deemed to be waived for the purposes of a post conviction proceeding;  clarifying a certain presumption relating to failure to make a certain allegation of error;  and generally relating to waiver of allegations of error in a certain appeal.

When the amendment was effected, the parenthetical condition pertaining to direct appeals was already in the Code;  nevertheless, the Legislature chose not to include such language with respect to the application for leave to appeal provision.  Because the provision pertaining to direct appeals has been interpreted to mean that failure to raise an issue on direct appeal constitutes a waiver, whether or not a direct appeal was taken, *see Kelly v. Warden, Md. Penitentiary,* 243 Md. 717, 718–19, 222 A.2d 835, 836 (1966); *Meadows v. Warden, Md. Penitentiary,* 243 Md. 710, 713, 222 A.2d 249, 251 (1966); *Austin v. Director, Patuxent Inst.,* 237 Md. 314, 316, 206 A.2d 145, 147 (1965), and the Legislature is presumed to have had knowledge of that interpretation when it added the language pertaining to applications for leave to appeal, it must have intended a different result in those cases involving applications for leave to appeal.  Thus, the history of that provision also contradicts the holding of the intermediate appellate court.

6. Not only did Jefferson apply for leave to appeal—at least his filings, captioned "Motion for an appeal pursuant to Maryland Rule 1311" and "Motion to Show Incompetence And Farce Representation," were so treated—but he raised the very point at issue here, although admittedly, not as artfully as it may have been done.  In the application he alleged:

> 3.) That the Petitioner Attorney didn't see to [sic] that the Petitioner have a fair trial And Sentence!
> 4.) That the Petitioner was Promise various Deal's [sic] within the Petitioner Plea.  Bargain Agreement with his Attorney!
> \* \* \* \* \* \*
> 6.) That the Honorable Judge never asked the Petitioner was he made any Promise by the State or His Attorney in which promise was made to the Petitioner in behalf of his Plea Bargain to Plea

of counsel or even the transcript of the circuit court proceedings, however. That is not atypical.[7] Presuming a knowing and intelligent waiver of an error under these circumstances—where the defendant is unrepresented by counsel and does not even have a transcript—is not only unfair, but is unrealistic as well.

To read the waiver provision as the majority does is to read certain key words out of the statute and to "virtually [do] away with the concept of 'waiver' as an intelligent and

Guilty which the Petitioner Feel he is innocence [sic] of Second Degree Murder.

7.) That the State and the Defense Attorney talked and Agree to A 10 year's cap which was Promise to the Petitioner by His Attorney in exchange For A Plea Bargain of Guilty or all Charge's agin's the Petitioner!

These allegations taken together, are sufficient to convey to any interested reader that Jefferson was complaining about, *inter alia,* a breached plea agreement. That should be all that is required, considering that the petitioner was proceeding *pro se,* without aid of a transcript and, as his application graphically demonstrates, operating at a deficit intellectually. It is not enough for the majority, however. What it and the Court of Special Appeals require, as their holdings demonstrate, is that an applicant for leave to appeal meet an unmeetable burden: the applicant not only must raise all possible issues in the application, but he or she must do so artfully, as well.

7. Maryland Rule 4–214(b) in pertinent part provides that "The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including writ of certiorari petition to expunge records and petition for post conviction relief." A discretionary proceeding as used in this context means a proceeding in which the court has the discretion whether or not to grant relief. In an application for leave to appeal, like a writ of certiorari, *see Walston v. Sun Cab Co.,* 267 Md. 559, 565–66, 298 A.2d 391, 395–96 (1973), the court has the discretion whether it will grant or deny the application, *see* Md.Rule 8–204(f)(1)–(5), and the applicant has no right to further review of that decision. *See* Maryland Code (1974, 1989 Repl.Vol.) § 12–202(4) of the Cts. & Jud.Proc. Article; *Williams,* 292 Md. at 207, 438 A.2d at 1303. Thus, the right to counsel does not extend to an application for leave to appeal.

The record on application for leave to appeal from a guilty plea proceeding consists of "all of the original papers and exhibits filed in the proceedings." Md.Rule 8–204(c). It does not, as in the case of a direct appeal, See also Md.Rule 8–801, include the transcript of the proceedings. The Court of Special Appeals may, however, "require the clerk of the lower court to submit any portion by the stenographic transcript of the proceedings below...." Md.Rule 8–204(e).

knowing failure to raise an issue." *Curtis*, 284 Md. at 140, 395 A.2d at 469. Section 645A(c), in both of its paragraphs, speaks of an allegation of error that could have been, but was not made, intelligently and knowingly, in the various ways designated. It presupposes, therefore, that the applicant "was previously 'aware of and understood the possible defense.' " *Id.*, 395 A.2d at 469, quoting *Jourdan v. State*, 275 Md. 495, 507, 341 A.2d 388, 395 (1975). The majority assumes, and therefore, holds that a *pro se* defendant, who files an application for leave to appeal in a guilty plea proceeding without a transcript, has sufficient information and ability to raise in that application, all allegations of error on which a post conviction petition may be premised.

Under its rationale, the majority could just as easily require that, henceforth, all appeals from criminal convictions must be noted by defendants without benefit either of counsel or transcript and that any issue not raised in that appeal by the *pro se* defendant will be deemed waived, absent special circumstances. A typical defendant who has, at most, an high school education, but no knowledge of the law, and who has just been sentenced to imprisonment undoubtedly will not be able carefully and comprehensibly to prepare, draft and file an application for leave to appeal. It is safe to say that a significant number will not recognize the waiver effect of a failure carefully to craft and file this "discretionary" application with the Court of Special Appeals.

The majority also fails to distinguish between the defendant's burden to establish the existence of "special circumstances" to excuse the failure to allege, in the application for leave to appeal, error sought to be raised on post conviction and his or her burden of rebutting the presumption of knowing and intelligent waiver. Those burdens are different and are triggered by different factors. Section 645A(c) separately addresses them; the explicit statement in the second paragraph is to the effect that the presumption is rebuttable, while the first explains how to handle "special circumstances" and when they become relevant. I read subsection (c) as this Court did in *Curtis:*

The first paragraph of subsection (c) declares that, for purposes of the Post Conviction Procedure Act, "an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation" in a prior proceeding. The test for "waiver" which the Legislature contemplated was clearly the "intelligent and knowing" failure to raise, not the failure of counsel or an unknowing petitioner to raise an issue. The first paragraph of subsection (c) goes on to provide that where there is a knowing and intelligent failure to raise an issue previously, the failure "shall be excused because of special circumstances," with the burden being upon petitioner to prove the existence of special circumstances. Thus, the matter of "special circumstances" only becomes pertinent where there is an intelligent and knowing failure of the petitioner to previously raise an issue. Where the record affirmatively shows that there was not an intelligent and knowing failure to raise, there is nothing to "excuse," and the presence or absence of "special circumstances" has no relevance.

The second paragraph of subsection (c) provides that where an allegation of error could have been made by a petitioner previously, "but was not in fact so made, there shall be a *rebuttable* presumption that said petitioner *intelligently and knowingly* failed to make such allegation." (Emphasis supplied.) The statute does not speak in terms of a conclusive presumption of waiver, absent special circumstances, as viewed by the State and the Court of Special Appeals. Rather, it is a presumption of an intelligent and knowing failure to have raised an issue, which failure can be rebutted by evidence or stipulated facts showing that petitioner did not "intelligently and knowingly" fail to raise the issue previously.

*Id.*, 289 Md. at 139, 395 A.2d at 468–69. Thus,

It is only where the petitioner in fact intelligently and knowingly failed to raise an issue, or where he is unable

to rebut the presumption of an intelligent and knowing failure, that he must show "special circumstances" in order to excuse his failure.

*Id.* at 140, 395 A.2d at 469.

To be sure, one logically may assume that a defendant who enters into a plea agreement, whether it requires the State to remain silent as to the sentence or to make a specific sentencing recommendation, will know that the State has violated its agreement. It is, of course, true, and quite clear, that the proceeding itself will, in that circumstance, provide the defendant with all that he or she needs to allege the State's breach of the plea agreement. It is neither clear nor necessarily true, however, that the defendant, not having been advised by counsel or the court of the consequences of the State's violation, will know, or will appreciate, that the violation entitles him or her to relief, the nature of that relief or how to obtain it. It is also far from obvious, in the absence of advice to that effect, that the defendant's sole avenue for relief is by raising the issue to be reviewed in an application for leave to appeal or that, by that failure to raise the issue in a discretionary application for leave to appeal, the right to a review of the merits is lost forever. The remedy for a plea agreement violation, unlike the *fact* of the violation, is far from obvious to a lay person.[8]

The situation is even more problematic when the defendant is improperly advised as to his or her post judgment

---

8. The holding in this case does, indeed, require more of the defendant who, without counsel, files an application for leave to appeal, seeking relief to which he or she is not absolutely, than it does of a defendant or an attorney filing a direct appeal. In the latter, the defendant or the attorney need only file a notice of appeal, Md.Rule 8–201, before being given the opportunity to study the record, including the transcript of the proceedings and before being required to specify the grants he or she wishes reviewed. By way of contrast, an applicant for leave to appeal must state in the application, within 30 days of the disposition "a concise statement of the reasons why the judgment should be reversed or modified and ... specify the errors allegedly committed by the lower court." Md.Rule 8–204(b)(2).

rights. A defendant who is not advised that he or she may file an application for leave to appeal and, where appropriate, the possible bases upon which such application may be predicated, may not be held to be aware of the availability of that option. When, consequently, that defendant does not apply for leave to appeal, he or she may not reasonably be said knowingly and intelligently to have failed to allege an error which could have been raised in that application.

In my opinion, the presumption of knowing and intelligent waiver was adequately rebutted by the circumstances in both these cases. That Jefferson proceeded *pro se* and without assistance of counsel or the aid of the transcript of the circuit court proceedings when he filed his application for leave to appeal are matters of which the post conviction court was obviously entitled to take notice. Moreover, the court could have considered, as it obviously did, the nature of the violation alleged. Another factor, of course, is whether the State even alleged a waiver.[9]

Whether the defendant could have, but did not, raise the issue of the State's violation of the plea agreement in an application for leave to appeal from a guilty plea is a question of fact, which depends upon the knowledge possessed by the defendant. It is significant, therefore, that in neither of these cases did the trial judge find waiver. In *McElroy*, the trial judge determined, *albeit* implicitly, that the defendant did not knowingly and intelligently waive his right to post conviction review; only after having considered evidence bearing on the voluntariness of the plea and the failure of the State to abide by the plea agreement did the court deny McElroy's petition for post conviction relief.

---

**9.** In *Jefferson,* the State did argue waiver. The trial court rejected that argument because, in its view, "the State must demonstrate that Jefferson 'was previously aware of and understood the possible [ground for relief].'" (Quoting *State v. Torres,* 86 Md.App. 560, 565, 587 A.2d 582, 584 (1991), quoting *Curtis v. State,* 284 Md. 132, 140, 395 A.2d 464, 469 (1978) and *Jourdan v. State,* 275 Md. 495, 507, 341 A.2d 388, 395 (1975)). The State neglected to raise the waiver issue in *McElroy.*

The trial judge in *Jefferson,* as we have seen, expressly held that the petitioner did not waive the State's breach of the ·plea agreement.

Nevertheless, without even addressing whether those findings are clearly erroneous or considering whether the defendant could have, but did not, raise the issue, the majority decides, as a matter of law, that the presumption of knowing and intelligent waiver was not rebutted despite express or implied findings of non-waiver by the trial judge. The majority's position apparently is that a defendant, in all cases, must adduce, beyond what reasonably may be gleaned from the record of the case, affirmative evidence, or make a proffer, to rebut the presumption or to show special circumstances. Neither *Curtis* nor any other case cited by the majority supports that conclusion. *Curtis* simply requires that the presumption be rebutted by evidence and noted that a proffer was an acceptable method of producing that evidence. *Curtis* did not even suggest that the evidence to rebut the presumption must be extrinsic to the record. The issue of special circumstances, as we have shown and *Curtis* holds, arises after the factual determination of waiver has been made. The majority approach, because of its restrictive view of how the presumption may be rebutted, in effect, merges the two determinations.

While it would have been wise for the petitioners to have explained why they did not proceed by application for leave to appeal, thereby covering that base, it is my submission that they were not required to do so since either the State did not contest their right to a post conviction hearing or the court found the State's objections lacking in merit. The court below was not erroneous in expressly or impliedly finding non-waiver.

The knowing and intelligent waiver of an allegation of error is implicated whenever a defendant files an application for leave to appeal. When he or she does not include within the application the allegations later sought to be raised on post conviction, the post conviction statute presumes that it was done knowingly and intelligently. The

strength of that presumption, and, hence, the nature and quality of the evidence necessary to rebut it depends upon the totality of the circumstances surrounding the application and its filing. Where it is apparent that the application is filed by a defendant, *pro se*, acting without counsel, the presumption is not particularly strong. It is weaker still when the application is filed without benefit of a transcript of the guilty plea proceeding.[10] The defendant's educational and literacy level, as indicated by the record and the application,[11] are additional significant factors to be considered. The evidence necessary to rebut the presumption will differ, necessarily, depending upon the strength of the presumption. When the record reflects an application for leave to appeal filed by a *pro se* defendant, of minimal intelligence and literacy and without benefit of a transcript of the proceedings, a post conviction court could very well conclude that those very same factors sufficiently rebutted the presumption of knowing and intelligent waiver. The

---

**10.** Whether a defendant has a copy of the transcript or not is a fact that will appear in the record only by implication. An application for leave to appeal must be filed within 30 days of the entry of judgment on the guilty plea. *See* Maryland Rule 8–204(b)(1). Ordinarily this is an insufficient amount of time to permit the court reporter to prepare a transcript of the proceedings. In any event, because the proceeding is one from which a mandatory appeal is not allowed, unless otherwise ordered to do so, the court reporter ordinarily will not prepare a transcript. Accordingly, it may be assumed that a defendant seeking leave to appeal from a guilty plea proceeding, whether represented by counsel or not, will not have benefit of the transcript of the proceedings.

**11.** The application for leave to appeal filed in the guilty plea proceeding ordinarily will be in the record of the post conviction proceeding. *See* Maryland Rule 4–402(a)(1). Should the defendant seek post conviction relief *pro se,* certainly the petition that he or she filed will be in the record. As sometimes occurs, the defendant will file additional documents, *e.g.* letters or motions. Perusal of the documents filed by the defendant will be quite instructive as to his or her mental acumen. It is also possible, as was the case in *McElroy,* that a transcript of the guilty plea proceeding will be filed with the Post Conviction Petition. In that event, the intellectual ability of the defendant may be revealed in the colloquy directed at determining whether the defendant's plea was entered voluntarily.

situation is different when the record reveals that the application was filed by counsel. Because it may be inferred that counsel informed the defendant of the options available to him or her, and the consequences of a failure to pursue them, a greater level of knowledge may be attributed to the defendant. And, for that reason, the court may require different and more exacting evidence to rebut the presumption, the court may require affirmative evidence of the defendant's lack of knowledge of the need to have earlier raised the issue. In short, a finding of waiver does not automatically flow from the fact that a presumption of waiver is triggered. This is especially so where the personal attributes of the defendant, as revealed by the record, are such as to undermine the presumption. In that case, whether or not the defendant has adduced additional affirmative testimony or offered evidence extrinsic to the record, to prove non-waiver, the trial court could determine that presumption was rebutted.

In both cases, the post conviction court determined, in *McElroy*, implicitly and in *Jefferson*, explicitly, that the defendant did not waive the allegation of error pertaining to the State's violation of the plea agreement. An appellate court is required to defer to such findings on review unless clearly erroneous. Neither finding by the post conviction court was clearly erroneous. Accordingly, I would reverse the judgment of the Court of Special Appeals in each case and remand to that court for consideration of the merits.[12]

Judge Chasanow has authorized me to state that he concurs in the views expressed herein.

---

12. The same analysis would apply if one were to accept the majority's conclusion that it is necessary to file an application for leave to appeal in order to preserve, for post conviction review, any allegation of error which could have been raised by way of application for leave to appeal.