Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Chief Judge WILKINSON joined. Judge MICHAEL wrote a concurring opinion, concurring in all but Part II.A. of the majority opinion and concurring in the judgment.
OPINION
LUTTIG, Circuit Judge:
Petitioner-appellant Steven Howard Oken, a Maryland inmate under sentence of death, appeals from the district court’s denial of his application under 28 U.S.C. § 2254 for a writ of habeas corpus. Oken claims, inter alia, that the state trial court’s voir dire questions were constitutionally inadequate under Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), and that he surrendered his right to testify at the criminal responsibility phase of his trial in reliance on advice from the trial court that was erroneous under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Because we conclude that the district court correctly upheld the Maryland Court of Appeals’ rejection of these and other claims advanced by Oken, we affirm the district court’s judgment denying Oken’s petition for a writ of habeas corpus.
I.
Oken was sentenced to death in 1991 by a Baltimore County jury for the murder of Dawn Garvin.[1] Four years earlier, Gar-vin’s naked corpse had been found by her father in the bedroom of her apartment, with two contact gunshot wounds to her head and a bottle protruding from her vagina. A .25 caliber handgun seized from Oken’s bedroom was later determined to be the murder weapon, and a piece of rubber recovered from the crime scene was traced to Oken’s tennis shoes. Moreover, several of Garvin’s neighbors identified Oken as the person who had attempted to gain entry to their residences under various false pretenses a few days prior to Garvin’s murder. On direct review, the Maryland Court of Appeals affirmed Oken’s convictions for first degree murder and first degree sexual offense, as well as *263 his sentence of death, but reversed his conviction and sentence for burglary.[2] See Oken v. State, 327 Md. 628, 612 A.2d 258, 283 (1992) (“Oken I”), cert. denied, 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993). On state collateral review, the Maryland Court of Appeals again rejected Oken’s challenges to his conviction and sentence, affirming the lower court’s denial of Oken’s petition for post-conviction relief. See Oken v. State, 343 Md. 256, 681 A.2d 30, 53 (1996) (“Oken II”), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997). Oken then filed an application for a writ of habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254. The district court denied Oken’s application for a "writ of habeas corpus and subsequently denied his motion for reconsideration.
II.
To determine whether the Maryland Court of Appeals’ rejection of Oken’s claims “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254(d)(1), we apply the standard of review set forth by the Supreme Court in Williams v. Taylor, — U.S. —, —, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000), which with one exception affirmed this court’s interpretation of section 2254(d)(1) in Green v. French, 143 F.3d 865 (1998), cert. denied, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). Specifically, the Court affirmed the following interpretation of the “contrary to” clause that we set forth in Green:
[A] decision is “contrary to” precedent only when, either through a decision of pure law or the application of law to facts indistinguishable in any material way from those on the basis of which the precedent was decided, that decision reaches a legal conclusion or a result opposite to and irreconcilable with that reached in the precedent that addresses the identical issue.
143 F.3d at 870. See Williams, — U.S. at —, 120 S.Ct. at 1519 (holding that the preceding interpretation “accurately reflects th[e] textual meaning” of the word “contrary”). The Court then restated the governing standard in the following terms, which correspond closely with the preceding sentence, and to which we of course adhere in reviewing Oken’s'claims:
Under the “contrary to” clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.
Id. at 1523. The Court also upheld the following interpretation of the “unreasonable application” clause that we set forth in Green:
[A] decision represents an “unreasonable application of’ precedent only when that decision applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable, when that decision fails to apply the principle of a precedent in a context where such failure is unreasonable, or when that decision recognizes the correct principle from the higher court’s precedent, but unreasonably applies that principle to the facts before it[.]
143 F.3d at 870. See Williams, — U.S. at —, 120 S.Ct. at 1520 (holding that the preceding interpretation was “generally correct”).[3] The Court then restated the *264 governing standard in the following terms, to which we of course also adhere in reviewing Oken’s claims:
Under the “unreasonable application” clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court’s decisions but unreasonably applies that principle to the facts of the prisoner’s case.
Id. at 1523.
The Court also adopted our holding that the “unreasonable application” inquiry is an objective one, see Green, 143 F.3d at 870 (“the writ of habeas corpus should issue [ ... ] if [the state court’s] decision rests upon an objectively unreasonable application of established principles to new facts” (emphasis added)). Nevertheless, it rejected our statement that state courts unreasonably apply clearly established federal law only when they “interpret[ ] or apply[ ]” such law “in a manner that reasonable jurists would all agree is unreasonable,” Green, 143 F.3d at 870, on the ground that this statement “would tend to mislead federal habeas courts by focusing their attention on a subjective inquiry rather than on an objective one,” Williams, — U.S. at —, 120 S.Ct. at 1522. Although the Court rejected reference to “all reasonable jurists” in conducting the “unreasonable application” inquiry, we thus understand the Court to have affirmed our categorical holding that the relevant inquiry is an objective one. See supra.
A.
Oken argues that the district court erred in denying him relief on his claim that the state trial court’s voir dire questions were constitutionally inadequate under Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), because they failed to satisfy Morgan’s requirement of an “inquiry” sufficient to identify “those jurors who, even prior to the State’s case in chief, had predetermined [ ... ] whether to impose the death penalty,” id. at 736, 112 S.Ct. 2222. Specifically, Oken contends that, even though the trial judge, asked some of the potential jurors follow-up questions, the initial questions propounded to every member of the jury panel were inadequate to identify all of the potential jurors who would need to be asked follow-up questions in order to satisfy the dictates of Morgan.
We reject this claim as proeedurally defaulted, and, in the alternative, on its merits.
1.
We reject Oken’s Morgan claim as procedurally defaulted because he failed to raise this claim on direct appeal in Oken I and thereby waived it as a matter of state law, and because, as a matter of state law, he failed to show special circumstances excusing this waiver. See Oken II, 681 A.2d at 36-38. We are satisfied that this state procedural rule requiring that, absent special circumstances, issues first be raised on direct review is both “independent” and “adequate,” as required by Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). It is “adequate” because it is “consistently or regularly applied,” Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), by Maryland courts. See, e.g., McElroy v. State, 329 Md. 136, 617 A.2d 1068, 1070, 1075 (1993); Smith v. Warden, Maryland Penitentiary, 4 Md.App. 550, 243 A.2d 897, 898 (1968), cert. denied sub nom. Smith v. Maryland, 393 U.S. 989, 89 S.Ct. 470, 21 L.Ed.2d 451 (1968); Anglin v. Director, Patuxent Institution, 1 Md.App. 564, 232 A.2d 532, 533 (1967), cert. denied sub nom. Anglin v. Maryland, 389 U.S. 873, 88 S.Ct. 164, 19 *265 L.Ed.2d 156 (1967). We are also satisfied that this procedural bar is sufficiently “independent” of federal law, even though the Maryland Court of Appeals, in applying it, referred to Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), since the Maryland court’s decision does not “fairly appear to rest primarily on federal law or to be interwoven with federal law,” Coleman, 501 U.S. at 735, 740, 111 S.Ct. 2546. The rule that issues must first be raised on direct appeal, on which the Maryland court based its decision that Oken’s Morgan claim was waived, is itself clearly a state-law rule. See cases cited supra. Admittedly, the Maryland court did look to federal law in making the antecedent determination that this waiver need not be “intelligent and knowing.” Because Maryland caselaw has relied in part on Johnson v. Zerbst in construing the scope of Md.Code Art. 27, § 645A(c)’s “intelligent and knowing” waiver standard, see, e.g., McElroy, 617 A.2d at 1070, the Maryland court did look to federal law in deter-. mining that this waiver standard did not apply. Nevertheless, we cannot say that, by virtue of this fact alone, the Maryland court’s decision “rest[s] primarily on federal law” or is “interwoven with federal law.” To the extent that the Maryland court did look to federal law in making the antecedent determination that the waiver need not be “intelligent and knowing,” the court’s reliance on federal law was limited to one aspect of the holding in Morgan and to state-law precedents applying Johnson ’s dicta that “fundamental constitutional rights” may be waived only intelligently and knowingly, 304 U.S. at 464, 58 S.Ct. 1019. And, more importantly, the Maryland court did not look primarily to federal law in making this antecedent determination. Rather, it based its determination in large part on the state-law premise that the failure to raise a Morgan claim on direct appeal is the sort of “tactical decision of counsel” that Maryland courts have, as a matter of state law, construed as falling outside the intended scope of section 645A(c). See Oken II, 681 A.2d at 37 (citing Curtis v. Maryland, 284 Md. 132, 395 A.2d 464, 474 (1978)).
Under the rule of Coleman v. Thompson, we are therefore barred from reviewing the merits of Oken’s Morgan claim, unless Oken has demonstrated that the “failure to consider [this claim] will result in a fundamental miscarriage of justice” or that sufficient “cause” and “prejudice” exist to excuse this procedural default. Coleman, 501 U.S. at 750, 111 S.Ct. 2546. Oken has demonstrated neither. He makes no argument that the failure to consider his Morgan claim will result in a “fundamental miscarriage of justice.” And the only “cause” that Oken has advanced for this procedural default—the ineffective assistance of his Oken I appellate counsel—was itself' proeedurally defaulted because Oken failed to make any mention of it in his opening brief to the Maryland Court of Appeals in Oken II. See Oken II, 681 A.2d at 36 n. 5; see also Health Servs. Cost Review Comm’n v. Lutheran Hospital of Maryland, Inc., 298 Md. 651, 472 A.2d 55, 61 (1984) (holding that issues raised only in the reply brief, and not the opening brief, are waived); Federal Land Bank of Baltimore, Inc. v. Esham, 43 Md.App. 446, 406 A.2d 928, 938 (1979) (same). And Oken has also failed to make any showing of “cause” and “prejudice” to excuse this last procedural default. Thus, the alleged ineffective ássistance of Oken’s appellate counsel cannot serve as “cause” to excuse Oken’s failure to raise his Morgan claim on direct appeal. See Edwards v. Carpenter, — U.S. —, —, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000). Consequently, we reject Oken’s Morgan claim as proeedurally defaulted, and thus we need not reach the merits of this claim.
2.
Even if we were to reach-the merits of Oken’s Morgan claim, we would still deny Oken relief on this ground because the Maryland Court of Appeals’ rejection of his Morgan claim was not “contrary to,” or an “unreasonable application of,” Mor *266 gan. The four questions initially asked of every member of the jury panel were as follows:
[1.] Do you have any strong feelings, one way or the other, with regard to the death penalty?
[2.] Do you feel that your attitude, regarding the death penalty, would prevent or substantially impair you from making a fair and impartial decision on whether the Defendant is not guilty or guilty, based on the evidence presented and the Court’s instructions as to the law?
[3.] Do you feel your attitude, regarding the death penalty, would prevent or substantially impair you from making a fair and impartial decision on whether the Defendant was or was not criminally responsible by reason of insanity, based on the evidence presented and the Court’s instructions on the law?
[4.] Do you feel that your attitude, regarding the death penalty would prevent or substantially impair you from sentencing the Defendant, based upon the evidence presented and the Court’s instructions as to the law which is applicable?
Oken II, 681 A.2d at 38-39. These questions were not the sort of “general fairness and ‘follow the law questions” that the Court held inadequate in Morgan, 504 U.S. at 734, 112 S.Ct. 2222; see id. at 724, 112 S.Ct. 2222 (“Do you know of any reason why you cannot be fair and impartial?”; “Do you feel you can give both sides a fair trial?”). Rather, they explicitly referred to the death penalty and asked whether the potential juror’s feelings about the death penalty were “strong.” Compare United States v. Tipton, 90 F.3d 861, 878-79 (4th Cir.1996) (holding that “the district court’s inquiry into death penalty attitudes was sufficient” to satisfy the dictates of Morgan, where the only question propounded to every member of the jury panel explicitly referred to the death penalty and asked whether the potential juror’s feelings about the death penalty were “strong”), cert. denied, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997). Moreover, we fail to see any meaningful difference between the question “Do you have strong feelings in favor of the death penalty?”, which Oken apparently concedes would be adequate, see Appellant’s Br. at 15-16 (citing Tipton, 90 F.3d at 878), and the first question asked here — “Do you have any strong feelings, one way or the other, with regard to the death penalty?”. Fairly read, the initial four questions, if truthfully answered, would have enabled the trial court to determine whether a potential juror’s feelings about the death penalty “would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath,” Morgan, 504 U.S. at 728, 112 S.Ct. 2222 (citation omitted). Consequently, even if the trial court had not asked several of the potential jurors additional follow-up questions on an individual basis, as the court did here, we would still be satisfied that the initial four questions asked of every member of the jury panel were by themselves sufficient to satisfy Morgan’s, requirement of an “inquiry” sufficient to identify “those jurors who, even prior to the State’s case in chief, had predetermined [ ... ] whether to impose the death penalty,” id at 736, 112 S.Ct. 2222; see also id. at 729, 112 S.Ct. 2222 (“The Constitution [ ... ] does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury.”).[4]
B.
Oken argues that the trial court erroneously advised him that any testimony he provided at the criminal responsibility phase could be used against him during *267 the sentencing phase and that this erroneous advice misled him into surrendering his right to testify at the criminal responsibility phase of his trial.[5] Oken contends that the court’s advice was erroneous because, under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), any testimony that he gave at the criminal responsibility phase could not be used against him at the later sentencing phase.
In making this last claim, Oken cannot, and does not, directly rely upon the stated holding of Simmons “that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection,” 390 U.S. at 394, 88 S.Ct. 967. Rather, he relies only upon the broadly worded rationale offered by the Simmons Court for its holding — namely, that “it [is] intolerable that one constitutional right should have to be surrendered in order to assert another,” id. Based on this rationale, Oken argues that, unless his testimony at the criminal responsibility phase is inadmissible against him at the sentencing phase, his right to testify at the criminal responsibility phase would “have to be surrendered in order to assert” his Fifth Amendment right not to be compelled to incriminate himself at the later sentencing phase.
We conclude that the Maryland Court of Appeals’ rejection of this claim was not “contrary to,” or an “unreasonable application of,” Simmons because, had the criminal responsibility phase been tried to the jury, as opposed to the judge sitting without the jury, then it would not have been “contrary to,” or an “unreasonable application of,” Simmons to hold that.any testimony that Oken gave at the criminal responsibility phase could be used against him at the later sentencing phase, and because we see no reason why a different result should obtain simply because the criminal responsibility phase was tried to the judge sitting without the jury.[6]
Had the criminal responsibility phase been tried to the jury, it would not have been “contrary to,” or an “unreasonable application of,” Simmons to hold that any testimony that Oken gave at the criminal responsibility phase could be used against him at the later sentencing phase because the Supreme Court has, post-Simmons, consistently upheld and assumed the validity of bifurcated capital-murder proceedings in which the same jury hears the evidence at both the guili/innocence and sentencing phases without being instructed that the defendant’s testimony at the guilt/innoeence phase may not be used against the defendant at the sentencing phase. See, e.g., Romano v. Oklahoma, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994) (assuming the validity of such a proceeding); Buchanan v. Kentucky, 483 U.S. 402, 417, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) (reaffirming “that the State’s interest in háving a single jury decide all *268 the issues in a capital trial was proper,” without intimating any need for instructing the jury that the defendant’s testimony in the guilt/innocence phase may not be used against the defendant in the sentencing phase); Lockhart v. McCree, 476 U.S. 162, 180, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (“We have upheld against constitutional attack the Georgia capital sentencing plan which provided that the same jury must sit in both phases of a bifurcated capital murder trial,” and which did not require that the jury be instructed that the defendant’s testimony in the guilt/innocence phase may not be used against the defendant in the sentencing phase); Gregg v. Georgia, 428 U.S. 153, 190-92, 195, 207, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion); 428 U.S. at 207-08, 96 S.Ct. 2909 (White, J., concurring in the judgment). Indeed, the Court has never even suggested the need for such an instruction. Consequently, although the Court has never squarely held that the jury need not be instructed that the defendant’s testimony in the guilt/innocence phase may not be used against the defendant in the sentencing phase, we cannot say that it would be “contrary to,” or an “unreasonable application of,” Simmons to so hold, given that the Court has repeatedly upheld state capital-murder proceedings that have not included such an instruction. And, again, we see no reason, nor could Oken' at oral argument suggest any reason, why a different result should obtain simply because the criminal responsibility phase was tried to the judge sitting without the jury.
Even if a different result should obtain when the criminal responsibility phase is tried to the judge sitting without the jury, Oken still does not have a color-able claim that he “ha[d] to [...] surrender! ]” his right to testify at the criminal responsibility phase “in order to assert” his Fifth Amendment privilege against compelled self-incrimination at the sentencing phase because, assisted by counsel, he chose to have the criminal responsibility phase tried to the judge sitting without the jury. And that choice itself, which was provided for only by state law, see Md. R. Cr. P. 4-314(b)(5)(B), did not involve the exercise of a federal constitutional right, see Lockhart, cited supra at 268 (reaffirming the Court’s decision in Gregg upholding Georgia’s capital sentencing plan under which “the same jury must sit in both phases of a bifurcated capital murder trial” once the defendant elects to have the first phase tried to a jury (emphasis added)).
C.
Oken next argues that there is insufficient evidence to sustain his conviction for first degree sexual offense. And because the state obtained the death penalty based only upon the aggravating circumstance that Oken murdered Garvin while committing or attempting to commit a first degree sexual offense against her, Oken contends that he may not lawfully be executed. No rational trier of fact could have found him guilty beyond a reasonable doubt of first degree sexual offense, Oken argues, because there was insufficient evidence that Garvin was alive when her vagina was penetrated with the bottle. Oken focuses in particular on the fact that the medical examiner found no evidence of trauma to Garvin’s groin area, which, Oken argues, suggests that Garvin was not alive when the bottle was inserted into the vagina.
We disagree. “[Vjiewing the evidence in the light most favorable to the prosecution,” a “rational trier of fact could have found the essential elements of [first degree sexual offense] beyond a reasonable doubt,” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Because Garvin’s clothing was found strewn about the living room floor, because her pants were found turned inside out, and because her brassiere was still fastened but ripped on the side, a rational trier of fact could have inferred that Gar-vin resisted perpetration of the sexual offense upon her and thus was alive at the *269 time that the offense was committed. See Oken I, 612 A.2d at 275-76. More importantly, the police recovered from Oken’s home a list in Oken’s handwriting that included the following items: “gauze pads; [ ... ] chloroform, [...], gag; sock and adhesive tape, [ ... ] dildos; vibrators,” Oken I, 612 A.2d at 276. From this list, a rational factfinder could have inferred that Oken had planned to restrain and perpetrate a sexual offense upon a live victim; such a factfinder could have then drawn the additional inference that Oken did in fact carry out such a plan. Moreover, a rational factfinder could have concluded that the absence of signs of trauma to Garvin’s groin area is not inconsistent with the bottle having been inserted into Gar-vin’s vagina while Garvin was still alive because Oken wielded a gun at the time and could have therefore coerced Garvin into cooperating with the insertion of the bottle.
D.
Oken argues that his trial counsel was constitutionally ineffective in failing adequately to prepare two expert witnesses, Drs. Payson and Berlin, who testified on direct examination at the sentencing phase that Oken suffered from “sexual sadism,” a mental disorder for which, they testified, there is presently no cure. J.A. 663, 672, 759. Counsel’s failure to prevent Oken’s experts from describing him as an incurable sexual sadist, Oken argues, “fell below an objective standard of reasonableness” and prejudiced him in the eyes of the jury, Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
We disagree, and we are confident that, in rejecting this claim, the Maryland Court of Appeals did not render a decision that was “contrary to,” or “an unreasonable application of,” Strickland. Trial counsel’s presentation of evidence of Oken’s sexual sadism did not fall below an objective standard of reasonableness because it was a reasonable attempt to prove, as a mitigating circumstance, that Oken suffered from a recognized mental disorder. See Oken II, 681 A.2d at 47. To implement such a defense strategy, which succeeded in persuading at least one member of the jury, see J.A. 840 (form containing jury’s “findings and sentence determination,” in which the jury certified that “[o]ne or more of us” found sexual sadism to be a mitigating circumstance), trial counsel had to establish, through the testimony of Drs. Payson and Berlin, the factual bases for their diagnosis of Oken’s sexual sadism; such a diagnosis would not have been persuasive as a mitigating factor had Drs. Payson and Berlin not fully explained it to the jury. In preparing Drs. Payson and Berlin to provide such an explanation, trial counsel could not have specifically instructed the doctors to avoid characterizing sexual sadism as incurable, since it would have been improper to have instructed the doctors as to the specific content of their testimony. See Oken II, 681 A.2d at 47 (citing, inter alia, State v. Earp, 319 Md. 156, 571 A.2d 1227, 1235 (1990) (cautioning attorneys that, in preparing witnesses, they should “avoid suggesting to the witness what his or her testimony should be”)). And Oken was not prejudiced, because even if counsel had ignored this admonition by Maryland’s highest court, the prosecution almost certainly would have elicited, through cross-examination or direct examination of other expert witnesses, a similar description of the current prospects for treating sexual sadism.
E;
We are also unpersuaded by the other claims of ineffective assistance of counsel advanced by Oken. First, trial counsel was not constitutionally ineffective in failing to object to, or move for a mistrial based on, certain remarks made by the prosecutors in their closing argument because it would have been futile for counsel to have done so, given the “wide latitude” accorded counsel in making closing argu *270 ments, Oken I, 612 A.2d at 281, and given that the prosecutors’ remarks, read in context, did not constitute an improper comment on Oken’s failure to testify or otherwise infringe upon Oken’s constitutional rights.[7]
Second, trial counsel was not constitutionally ineffective in advising Oken to enter a conditional guilty plea to Lori Ward’s murder in Maine. Oken argues that counsel was ineffective because counsel incorrectly advised him that the Maine guilty plea would not be admissible against him in Maryland, and because counsel incorrectly advised him that, under the Interstate Agreement on Detainers (“LAD”), the Maine guilty plea would shield him from Maryland’s death penalty by virtue of his having to first serve his Maine sentence of life imprisonment before any Maryland sentence could be satisfied. Oken contends that he was prejudiced by this erroneous advice because, absent such advice, he would not have pled guilty in Maine, and thus would have been eligible for another potential mitigating factor at the sentencing phase of his Maryland trial — namely, the absence of prior convictions for crimes of violence, see Md.Code Art. 27, § 413(g)(1). We reject Oken’s claim as meritless.
Trial counsel’s performance did not fall below an objective standard of reasonableness because at the time that counsel advised Oken to plead guilty in Maine, “there was no way of knowing the Governors of the two states would enter into” an executive agreement trumping the IAD, as they did after the proceeding in Maine, see J.A. 862, nor was it by any means “certain that this plea would be admissible in the [Maryland] proceeding,” Oken II, 681 A.2d at 50; see, e.g., Md. R. Evi. 5-403 (“evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury [ ... ]”). Further, Oken cannot show that he was prejudiced by counsel’s advice because, even had he not pled guilty in Maine, he would have almost certainly been convicted in Maine prior to his trial for Garvin’s murder in Maryland, see Oken II, 681 A.2d at 50 (“[Oken]’s own [post-conviction] expert admitted the case against [him] in Maine was overwhelming.”), .since at the time of his arrest in Maine and the commencement of Maine’s proceedings against him, Maryland had not yet filed formal charges against him in connection with Garvin’s murder, see J.A. 851.
Third, trial counsel was not constitutionally ineffective at the sentencing phase in failing to present sufficient evidence of Oken’s parole ineligibility under Maine law. The jury was adequately apprised of Oken’s parole ineligibility through the introduction into evidence of Oken’s presentence investigation report, which “showed that Oken had been sentenced in Maine to life imprisonment without parole,” and through counsel’s opening statement and closing argument. See Oken II, 681 A.2d at 41; see, e.g., J.A. 822-24 (“His punishment [in Maine] was life without parole. The man is already in jail in a prison for the rest of his days, life without parole, and that means life without parole. He isn’t going anywhere. If you found him not guilty [...], he would go back to the state of Maine and spend the rest of his life in jail there.”).
Fourth, trial counsel was not constitutionally ineffective in failing to adduce sufficient evidence of Oken’s substance abuse at the time of the Garvin murder. Counsel presented substantial evidence of *271 Oken’s substance abuse “through the testimony of Oken’s ex-wife, father, mother, acquaintances, and [ ... ] Dr. Berlin, Dr. Payson, and Dr. Spodak.” Oken II, 681 A.2d at 45; see, e.g., J.A. 545-49, 557-59, 603-19, 640-43, 723-24, 780. Any further evidence of his substance abuse would have been nothing more than cumulative.[8]
Finally, even were we to find one or more of these purported instances of objectively unreasonable performance by counsel to be such, either individually or cumulatively, we still could not say that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Even Oken’s own expert testified on cross-examination during the sentencing phase:
I was told by Mr. Oken that he approached the victim outside the apartment, asked if he could use the phone, made his way into her apartment, looked about, shut the door, took out a gun and asked that she get undressed. He asked her to begin masturbating. He masturbated. At the same time he then asked her to get up and perform oral sex on him. He then pushed her back. He got on top of her, he tried to have intercourse, he did this in different positions, including anal sex. He got up at some point, went into the kitchen, brought back a bottle, Durkee’s hot sauce bottle, which he said he inserted into her vagina. He made her take the bottle in and out. He was masturbating at the same time. He became angry because he couldn’t reach climax and then he killed her.
Oken I, 612 A.2d at 279; see also J.A. 772-73. Thus, the jury had before it an overwhelming amount of evidence of the aggravating circumstance of the first degree sexual offense to outweigh both the mitigating evidence which was introduced at trial and that which Oken now contends should have been introduced.

CONCLUSION

The judgment of the district court denying Steven Howard Oken’s petition for a writ of habeas corpus is hereby affirmed.

AFFIRMED

. Oleen was separately convicted of murdering his sister-in-law, Patricia Hirt, as well as a motel clerk in Maine, Lori Ward.

. Oken’s former conviction and sentence for burglary, set aside on direct appeal, are not at issue in this case.

. The Court did, however, leave open the question of whether "a decision represents an unreasonable application of precedent [ ... ] when that decision applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent *264 ís not reasonable, [or] when that decision fails to apply the principle of a precedent in a context where such failure is unreasonable,” Green, 143 F.3d at 870, finding that "[ac-though th[is] holding may perhaps be correct,” "[t]oday's case does not require us to decide” whether in fact it is, Williams, — U.S. at —, 120 S.Ct. at 1521.

. We also reject the suggestion that the trial court was required to ask potential jurors whether they would automatically impose the death penalty in rape-murder cases because, as Oken conceded at oral argument, Morgan does not require crime-specific voir dire questions.

. The criminal responsibility phase, which Oken elected to have decided by the trial judge sitting without the jury, followed the guih/innocence phase, which was heard by a jury, and preceded the sentencing phase, which was heard by the same jury.

. In concluding that the trial court did not run afoul of Simmons by advising Oken that any testimony he gave at the criminal responsibility phase could be used against him at the later sentencing phase, the Maryland court reasoned that in McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), vacated in part on other grounds sub nom. Crampton v. Ohio, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972), the Court "declared that its earlier decision in Simmons was strictly limited to the protection of a defendant's testimony in a hearing on a motion to suppress evidence alleged to have been obtained in violation of his constitutional rights,” Oken I, 612 A.2d at 263 (citing McGautha, 402 U.S. at 211-12, 91 S.Ct. 1454). To avoid the question of the continued authority of McGautha in the wake of its partial vacatur, we uphold the Maryland court's decision that the trial court’s advice did not run afoul of Simmons on different grounds.

. The prosecutors indirectly referred to Oken as a ''monster,” commented upon his demeanor during the trial, stated that ''[t]he defendant said some things through his attorney in opening that I wanted to address,” noted that Oken "really doesn't dispute any” of the prosecution's evidence, and called upon the jury to make the same "kind of a personal sacrifice” that U.S. soldiers fighting the Persian Gulf War were making at the time of the trial. J.A. 246, 197, 245, 819.

. As to the remainder of Oken’s claims, we agree with the district court that Oken has failed to make "a substantial showing of the denial of a constitutional right,” 28 U.S.C. § 2253(c)(2). We therefore deny a certificate of appealability as to these claims, as did the district court, and dismiss the appeal as to these claims.